[L. A. No. 25060. In Bank. Oct. 24, 1958.]

CARL F. W. BORGWARD, G.M.B.H. (a Corporation), Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; A. W. WOOLVERTON et al., Real Parties in Interest.

74

 

Overton, Lyman & Prince, Eugene Overton and Ernest E. Johnson for Petitioner.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Assistant County Counsel, for Respondent.

Macbeth & Ford and Moira Ford for Real Parties in Interest.

TRAYNOR, J.—Petitioner, Carl F. W. Borgward G. M. B. H., a German corporation, seeks a writ of mandate to compel the Superior Court of Los Angeles County to enter its order quashing service of summons in an action brought by plaintiffs, the real parties in interest in this proceeding. (See Code Civ. Proc. § 416.3.) Earle C. Anthony, Inc., and Doe One to Doe Ten were joined as defendants in plaintiffs' action. Borgward was served by making personal service on Lutz Knemeyer in California as its alleged "general manager in this State." (Corp. Code, § 6500.) It appeared specially and moved to quash the service of summons. Its motion was denied.

At the time they filed their action, plaintiffs were distributors and dealers selling Borgward automobiles and parts pursuant to a contract with Anthony, the exclusive importer of Borgward's products for the western United States. Anthony had announced its intention not to renew plaintiffs' contract at the end of its term on December 31, 1957. Plaintiffs alleged that Anthony had agreed that the contract would be renewed unless plaintiffs gave Anthony good cause for refusing to do so, but that the contract failed to express this agreement. They also alleged an oral contract with Borgward whereby plaintiffs agreed to enter into a franchise agreement with Anthony for distributing Borgward products and Borgward agreed that plaintiffs' franchise to market such products in the territory already developed in Southern California would not be terminated so long as plaintiffs performed their duties diligently and efficiently, and that Anthony's contract with Borgward was subject to this oral agreement.

Plaintiffs also alleged that Anthony and Doe One to Doe Ten entered a conspiracy to interfere with their oral contract with Borgward for the purpose of appropriating plaintiffs' business for themselves.

Plaintiffs prayed for reformation of their contract with Anthony and a declaration of their rights thereunder; for a declaration of the existence and terms of their oral agreement with Borgward; for injunctive relief against Anthony and Borgward to secure plaintiffs' rights under their contracts; and for compensatory and exemplary damages against Anthony and Doe One to Doe Ten.

Borgward contends that it was not and is not doing business in this state within the meaning of Code of Civil Procedure, section 411, subdivision 2, and is therefore not subject to service of process pursuant to Corporations Code, section 6500.

In *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal. 2d 855, 858-859 [323 P.2d 437], we stated: "The statute authorizes service of process on foreign corporations that are 'doing business in this State.' That term is a descriptive one that the courts have equated with such minimum contacts with the state 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause.

' "[D]oing business" within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process.' (*Eclipse Fuel etc. Co.* v. *Superior Court,* 148 Cal.App. 2d 736, 738 [307 P.2d 739]. . . .)"

It is contended at the outset that we should reexamine the rule of the Jahn case in the light of Corporations Code, sections 6203 and 6300. Code of Civil Procedure section 411, subdivision 2, provides for service of process on foreign corporations "doing business in this State; in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code." Those sections and sections 6203 and 6300 are all in part 11 of the Corporations Code. Section 6300 provides that "this part does not apply to corporations engaged solely in interstate or foreign commerce," and section 6203 provides that " 'Transact intrastate business' means entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce." Accord-

ingly, it is contended that no provision has been made for service on corporations engaged solely in interstate or foreign commerce and that "doing business in this State" within the meaning of section 411 must mean transacting intrastate business as defined in section 6203.

There is no merit in this contention. ██ Section 6203 defines, not the words "doing business in this State," but the words "transact intrastate business." Since the Legislature was dealing specifically with the definition of terms, had it meant the two phrases to be equivalent, it would have said so. ██ Moreover, by excluding acts done by a foreign corporation in this state in interstate or foreign commerce from its definition of the words "transact intrastate business," it clearly recognized that a corporation may do business in this state without transacting intrastate business.

██ · Nor does section 6300 afford any basis for departing from the well established meaning of "doing business in this State," which was followed and applied in the Jahn case. It is true that if the service provisions of part 11 of the Corporations Code stood alone, section 6300 would prevent their application to corporations engaged solely in interstate or foreign commerce. Those provisions are applicable to such corporations, however, not *ex proprio vigore*, but because they are incorporated by reference in section 411, subdivision 2 of the Code of Civil Procedure. To hold that section 6300 governs section 411, subdivision 2, would require amending it to read "This part and section 411, subdivision 2 of the Code of Civil Procedure do not apply to corporations engaged solely in interstate or foreign commerce."

██ In addition to the service provisions, part 11 of the Corporations Code contains detailed regulatory and penal provisions governing foreign corporations engaged in the transaction of intrastate business, and the legislative history of section 6300 makes clear that it was these latter provisions, not section 411, subdivision 2, that are governed by it. ██ Section 6300 was based on former Civil Code, section 407, which provided that "The *requirements* of this chapter [now part 11 of the Corporations Code] as to foreign corporations shall not apply to corporations engaged solely in interstate or foreign commerce." (Italics added.) Section 407 thus referred only to the acts required to qualify to conduct intrastate business and made clear that foreign corporations engaged solely in interstate or foreign commerce were not required so to qualify. It is no way indicated, however, that

such corporations doing business in this state were not subject to service of process here. Given this court's recognition in 1942 that a foreign corporation engaged solely in interstate commerce may be amenable to suit here (*West Publishing Co.* v. *Superior Court*, 20 Cal.2d 720, 729-731 [128 P.2d 777]), and the legislative declaration when the Corporations Code was enacted in 1947 that the "provisions of this code, insofar as they are substantially the same as existing statutory provisions relating to the same subject matter, shall be construed as restatements and continuations, and not as new enactments" (Corp. Code, § 2), the recasting of the wording of section 407 of the Civil Code in section 6300 of the Corporations Code cannot be interpreted as intended to effect a radical change in the jurisdiction provided over foreign corporations by section 411, subdivision 2 of the Code of Civil Procedure.

Borgward contends, however, that even under the tests enunciated in the Jahn case and the cases there cited, it is not doing business in this state. Although it appears that several million dollars worth of its products are sold in this state annually, Borgward contends that such business is solely that of its independent importer Anthony, who purchases and takes title to its products in Germany. (See *Irvine Co.* v. *McColgan*, 26 Cal.2d 160, 165-166 [157 P.2d 847, 167 A.L.R. 934].) Plaintiffs do not seek to found jurisdiction on the fact alone, however, that Borgward's products are sold in this state through Anthony, but on that fact coupled with the acts done in this state by Borgward's agent Knemeyer in negotiating and arranging for the distribution of Borgward products by independent contractors, and they point out that their alleged cause of action is directly related to Knemeyer's activities here.

Knemeyer visited California for periods of several days on three occasions in 1956 and 1957. In February 1956, with the approval of Borgward, he executed a contract in the form of a letter from Thomson to Borgward in Los Angeles appointing Walter J. Thomson Company, Ltd., as exclusive importer. It described Knemeyer's activities as follows:

"1. The territory which you originally granted to us as sole importers had been broadened by Mr. Knemeyer to include all of the trading area territory lying west of the Mississippi River.

"2. Mr. Knemeyer has removed Bob Knapp as distributor

for California and has approved the appointment of Bob Knapp as exclusive dealer for the City of Pasadena. . . .

"3. Mr. Knemeyer has approved the appointment of Messrs. Ed. Van Horn and Gordon Reid (who are forming a new corporation) as distributors for Northern California, Oregon, Washington, Idaho and the northern part of Nevada. . . .

"4. Mr. Knemeyer has approved appointment of Mr. Whitney Lyon as distributor for all of the remaining territory not specifically mentioned in paragraph 3 above. . . ."

Approximately a year later, after a dispute had arisen between Thomson and some of its distributors including plaintiffs, Knemeyer returned to California and with Borgward's approval, terminated Thompson as importer, and appointed Anthony. At that time Knemeyer met with plaintiffs and other distributors and according to plaintiffs made the oral agreement that is the subject of their action against Borgward.

After Anthony informed plaintiffs that their contract would not be renewed, plaintiffs wrote Borgward and received a cable in reply stating that the matter was being referred to Knemeyer, then enroute to the United States and Canada, who would get in touch with plaintiffs in California. Process was served on Knemeyer shortly after he arrived in California on this trip.

Disregarding the numerous affidavits setting forth extrajudicial statements of Knemeyer to California distributors and dealers that he had full authority to act for Borgward with respect to the importation, distribution, and sales of its products in California (see *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 42 [286 P.2d 21]; Code Civ. Proc., § 1870, subd. 5), we conclude from the foregoing evidence that Knemeyer performed important services for Borgward in California, namely, the establishment and maintenance of a satisfactory importing, distributing, and sales organization. Regardless of how closely these activities may have been supervised from Germany, they nevertheless were activities of Borgward through its agent here, and were sufficient to constitute Knemeyer Borgward's "general manager in this State" (Corp. Code, § 6500) for purposes of service of process if Borgward was doing business here. (*Chas. Ehrlich & Co.* v. *J. Ellis Slater Co.*, 183 Cal. 709, 713 [192 P. 526]; *Eclipse Fuel etc. Co.* v. *Superior Court*, 148 Cal.App.2d 736, 745-746 [307 P.2d 739]; *Milbank* v. *Standard Motor Const. Co.*, 132 Cal. App. 67, 71 [22 P.2d 271].)

It thus appears that Borgward is not merely a manufacturer who sells its products in Germany knowing they will reach this state. It has actively undertaken to promote and protect its market in California by sending its agent to negotiate contracts here. It reaps the benefit of the local market and has access to our courts to enforce any rights growing out of its transactions here. Plaintiffs' alleged cause of action grew directly out of their relationship with Borgward's agent here and Borgward's dealings with its local importer Anthony. Plaintiffs are not seeking needlessly to inject Borgward into a controversy concerning only them and Anthony. If plaintiffs are able to prove the existence of their contract with Borgward and its breach, they may nevertheless fail to prove that it is binding on Anthony or to establish any cause of action against Anthony. Obviously, however, it is preferable, if possible, to settle the entire controversy in one action, here or in Germany. Even if it is assumed that plaintiffs could secure jurisdiction over Anthony in a German court, since all of the relevant events occurred in California the burden on plaintiffs and Anthony of prosecuting and defending in Germany would far outweigh the burden on Borgward of defending here.

No point would be served by reiterating here the review of the recent authorities sustaining jurisdiction over foreign corporations set forth in the Jahn case. For the reasons stated above, however, and in the light of those authorities, we conclude that "the quality and nature of [its] activity in relation to the fair and orderly administration of the laws" fully justifies subjecting Borgward to the jurisdiction of our courts. (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].)

The alternative writ is discharged and the peremptory writ denied.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

McCOMB, J.—I dissent. I would grant the writ for the reasons expressed by Mr. Justice Vallée in the opinion prepared by him for the District Court of Appeal in *Borgward* v. *Superior Court* (Cal.App.), 325 P.2d 137.

Petitioner's application for a rehearing was denied November 19, 1958. Schauer, J., and McComb, J., were of the opinion that the application should be granted.