[Civ. No. 23589. Second Dist., Div. Three. Feb. 17, 1959.]

FLORENCE NIGHTINGALE SCHOOL OF NURSING, INC. (a Corporation), Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents; LEON WOLFF, Real Party in Interest.

Isaac E. Ferguson for Petitioner.

Harold W. Kennedy, County Counsel, and Edward A. Nugent, Deputy County Counsel, for Respondents.

Ralph B. Herzog and Marvin G. Burns for Real Party in Interest.

VALLÉE, J.—Petitioner, Florence Nightingale School of Nursing, Inc., an Illinois corporation, seeks a writ of mandate to compel the Superior Court of the County of Los Angeles to enter its order quashing service of summons in an action brought by Leon Wolff, doing business as The Lincoln Institute of Practical Nursing, the real party in interest in this proceeding, for an injunction and damages for alleged unfair competition. Petitioner was served by personal delivery to the Secretary of State and by mail to its secretary in Chicago, Illinois, pursuant to order of the superior court. It appeared specially and moved to quash service of summons. The motion was denied.

Petitioner contends it was not, and is not, doing business in this state within the meaning of section 411, subdivision 2 of the Code of Civil Procedure and is therefore not subject to service of process pursuant to section 6501 of the Corporations Code.

Petitioner's principal place of business is in Chicago, Illinois. It gives instruction in nursing by correspondence conducted from its office in Chicago to persons in Illinois and other states. It has advertised and currently advertises in

more than 25 magazines with circulation in California.[1] The relationship between petitioner and students is initiated through an inquiry made in response to an advertisement by the prospective California student by mail directed to petitioner's Chicago office. In response to the inquiry, petitioner mails to the California prospect a form letter, a brochure containing material descriptive of the courses offered, an application, and a self-addressed envelope. A California resident who enrolls for a course of instruction signs and mails an application to petitioner together with payment in whole or in part, receives lessons by mail, submits his work by mail, and receives criticism and comment from petitioner by mail. In substantially all cases when a California resident enrolls, each lesson thereafter is sent in the mail by petitioner from Chicago to the California resident, accompanied by an examination. The student writes out the answers to the examination and returns

---

[1]Some of the magazines in which advertisements appear in California are: "True Romance," "Movie Life," "True Love," "True Experience," "Secrets," "Revealing Romances," "Daring Romance," "Confidential Confessions," "Photoplay," "Romance Time," and "True Crime."

Examples of the advertising are:

"ENJOY SECURITY AND STEADY PAY AS A GRADUATE PRACTICAL NURSE

[Photo of nurse]

LEARN AT HOME IN 10 WEEKS

Earn to $65.00 a week in good times or bad. Enjoy security. High School not needed. No age limit. Mature and older women also needed desperately. Doctors endorse this simple lowest-cost course. Diploma awarded. No Obligation

AVERAGE COST PER LESSON ONLY $1.25

SEND TODAY FOR FREE 16 PAGE NURSES BOOK

FLORENCE NIGHTINGALE SCHOOL OF NURSING
Room 81T118, S. Wabash Avenue, Chicago 5, Illinois

Name _____
Address _____
City _____ State _____"

"STEADY PAY EVERY DAY AS A PRACTICAL NURSE

[Photo of nurse]

AVERAGE COST PER LESSON ONLY $1.25

Enjoy security, no recession for Nurses. Earn to $65.00 a week, good times or bad. Age, Education, Not important. Earn while learning. Send for FREE 16 page book

LEARN AT HOME IN ONLY 10 WEEKS

FLORENCE NIGHTINGALE SCHOOL OF NURSING
Room 7R128, 131 S. Wabash Avenue, Chicago 3, Ill."

them by mail to petitioner in Chicago. Petitioner corrects the examination and returns it with comments through the mail to the California student together with the next lesson.

A course consists of about 40 lessons. The lessons and examinations are sent to the California students in groups of four. This is repeated until completion of the entire course. There are about 10 mutual exchanges of correspondence between petitioner and each California student. The average time for completion of a course is six months. The cost of a course is $27.50, $39.50, or $47.50, depending on the plan of instruction chosen and the method of payment. On completion of the course the student is notified by mail of success or failure.

All contact between petitioner and its students is by mail only. Petitioner has never had any office, postal address, telephone listing, bank account, property, agents, solicitors, or other representatives in California. The number of petitioner's students in California is less than 1 per cent of its entire enrollment.

"The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." (*Perkins* v. *Benguet Consol. Min. Co.*, 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485, 492] ; *Boote's Hatcheries & Packing Co.* v. *Superior Court*, 91 Cal.App.2d 526 [205 P.2d 31] ; *Jeter* v. *Austin Trailer Equipment Co.*, 122 Cal.App.2d 376 [265 P.2d 130].)

The later decisions in California construe the phrase "doing business in this State" as synonymous with those business activities required by the due process clause as the basis for jurisdiction. (*Sales Affiliates, Inc.* v. *Superior Court*, 96 Cal.App.2d 134, 137 [214 P.2d 541] ; *Kneeland* v. *Ethicon Suture Laboratories*, 118 Cal.App.2d 211, 220-221 [257 P.2d 727].) The Supreme Court in *Borgward* v. *Superior Court*, 51 Cal.2d 72, stated (p. 75 [330 P.2d 789]) :

"In *Henry R. Jahn & Son* v. *Superior Court*, 49 Cal.2d 855, 858-859 [323 P.2d 437], we stated: 'The statute authorizes service of process on foreign corporations that are "doing business in this State." That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct.

154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause. " '[D]oing business' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process." (*Eclipse Fuel etc. Co.* v. *Superior Court*, 148 Cal.App.2d 736, 738 [307 P.2d 739]. . . .)' " (Also see *Travelers Health Assn.* v. *Virginia*, 339 U.S. 643 [70 S.Ct. 927, 94 L.Ed. 1154]; *Perkins* v. *Benguet Consol. Min. Co.*, 342 U.S. 437 [72 S.Ct. 413, 96 L.Ed. 485]; *McGee* v. *International Life Ins. Co.*, 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223]; *Parmelee* v. *Iowa State Traveling Men's Assn.*, 5 Cir., 206 F.2d 518; 5 U.C.L.A. Law Rev. 198, 214.)

*Hanson* v. *Denckla*, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283], states (2 L.Ed.2d 1298) : " [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*International Text Book Co.* v. *Pigg*, 217 U.S. 91 [30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.N.S. 493], held that a Pennsylvania corporation conducting a correspondence school whose business involved the solicitation of students in Kansas by local agents, who also collected and forwarded to the home office in Pennsylvania the tuition fees, and the systematic intercourse by correspondence between the company and agents, and the transportation of the needful books, apparatus, and papers, was doing business in Kansas. There is no essential difference in the activity or in the results between solicitation by agents in the state and solicitation by advertising in magazines circulated in the state. Solicitation by advertising may be more productive of business than by agents. These days it would seem that there is much more solicitation by advertising in newspapers, magazines, and over radio and television than by any other method.

*International Text Book Co.* v. *Mueller*, 149 Ill.App. 509, held that a Pennsylvania corporation which conducted a school by correspondence was doing business in Illinois. The court stated (p. 511) :

"In the performance of its corporate functions it [the Pennsylvania corporation] examined and corrected, from time to time by correspondence the papers submitted to it by its students in the several courses of study pursued by them and in like manner informed the students as to the character of

the work done by them. The insistence by appellant that in so conducting a school it was not transacting business in Illinois, because its buildings, instructors and executive officers were all located in Scranton, Pennsylvania, is not tenable in view of the fact that a school cannot exist without pupils, and necessarily where the pupils and instructors are located in different states, the school cannot properly be said to have an exclusive *situs* in one state.'' (To the same effect, *Air Conditioning Training Corp.* v. *Majer,* 324 Ill.App. 387 [58 N.E.2d 294] ; *International Text Book Co.* v. *Gillespie,* 229 Mo. 397 [129 S.W. 922] ; anno : 38 A.L.R.2d 760.)

 Petitioner asserts that since it has no place of business, no agents, employees, or representatives, and no records of its business, in California ; and since its activity is confined to solicitation by advertisements in nationally circulated magazines with almost negligible contacts with persons in California, it is not doing business in the state. Early cases holding that personal jurisdiction could not be obtained when the sole basis thereof consisted in mere solicitation within the state seem to be no longer authoritative. ''Under the minimum contacts test of the International Shoe case *regular sales solicitation* alone can constitute doing business rendering the foreign corporation amenable to process in actions engendered by such activities.'' (*Henry R. Jahn & Sons* v. *Superior Court,* 49 Cal.2d 855, 859 [323 P.2d 437]. Emphasis ours.) ''In the more recent decisions, solicitation, without more, constitutes doing business within a state when the solicitation is a regular, continuous and substantial course of business.'' (*Koninklijke L. M.* v. *Superior Court,* 107 Cal.App.2d 495, 500 [237 P.2d 297].) ''The principles announced in the International Shoe case have had a most telling and devastating effect on the venerable rule laid down in *Green* v. *Chicago, B. & Q. R. Co.,* 205 U.S. 530 [27 S.Ct. 595, 51 L.Ed. 916], that personal jurisdiction cannot be obtained over a foreign corporation when the sole basis thereof consists of 'mere solicitation' within the area of the forum's sovereignty. Dissatisfaction and disagreement with the so-called 'mere solicitation' rule antedated the opinoins expressed in the International Shoe case.'' (*Jeter* v. *Austin Trailer Equipment Co.,* 122 Cal.App.2d 376, 382 [265 P.2d 130].) ''A number of recent decisions applying the International Shoe doctrine, have treated solicitation, plus very little else, as a sufficient business activity to satisfy the requirements of due process.''

(*Kneeland* v. *Ethicon Suture Laboratories, Inc.*, 118 Cal.App. 2d 211, 225 [257 P.2d 727].)

*Frene* v. *Louisville Cement Co.*, 134 F.2d 511 [77 App. D.C. 129, 146 A.L.R. 926], states (p. 516) :

"But when jurisdiction had been extended to include some types or kinds of occasional acts and nearly all kinds of continuous operations, the rule which nullifies judicial power when a foreign corporation engages continuously and regularly in 'mere solicitation' is, to say the least, anomalous. Solicitation plus maintaining an office is sufficient. Solicitation plus maintaining a warehouse likewise sustains jurisdiction. Solicitation plus making deliveries, collections and handling claims, has like effect. Solicitation without these additional activities, or any of them, may be more sustained, more insistent, more productive of business than it is with them. Solicitation is the foundation of sales. Completing the contract often is a mere formality when the stage of 'selling' the customer has been passed. No business man would regard 'selling,' the 'taking or orders,' 'solicitation' as not 'doing business.' The merchant or manufacturer considers these things the heart of business. . . .

"It would seem, therefore, that the 'mere solicitation' rule should be abandoned when the soliciting activity is a regular, continuous and sustained course of business, as it is in this case. It constitutes, in the practical sense, both 'doing business' and 'transacting business,' and should do so in the legal sense. Although the rule has not been clearly and expressly repudiated by the Supreme Court, its integrity has been much impaired by the decisions which sustain jurisdiction when very little more than 'mere solicitation' is done." (Also see *Boyd* v. *Warren Paint & Color Co.*, 254 Ala. 687 [49 So.2d 559, 561].)

There is no substantial difference between the facts at bar and those in *Travelers Health Assn.* v. *Virginia*, 339 U.S. 643 [70 S.Ct. 927, 94 L.Ed. 1154]. There a Nebraska corporation carried on a mail-order insurance business in Virginia. Its only office was in Nebraska. It did not have any agents in Virginia but instead relied upon solicitations by its Virginia policyholders. Holding that the Nebraska corporation was doing business in Virginia, the court stated (94 L.Ed. 1160) :

"Appellants' chief reliance for the due process contention is on *Minnesota Commercial Men's Asso.* v. *Benn*, 261 US 140, 67 Led 573, 43 SCt 293. There a Minnesota association

obtained members in Montana by the same mail solicitation process used by Travelers to get Virginia members. The certificates issued to Montana members also reserved the right to investigate claims, although the Court pointed out that Benn's claim had not been investigated. This Court held that since the contracts were 'executed and to be performed' in Minnesota, the Association was not 'doing business' in Montana and therefore could not be sued in Montana courts unless 'consent' to Montana suits could be implied. The Court found the circumstances under which the insurance transactions took place insufficient to support such an implication.

"But where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state, courts need not resort to a fictional 'consent' in order to sustain the jurisdiction of regulatory agencies in the latter state. And in considering what constitutes 'doing business' sufficiently to justify regulation in the the state where the effects of the 'business' are felt, the narrow grounds relied on by the Court in the Benn Case cannot be deemed controlling."

It has been held that there is jurisdiction where the cause of action arose out of a mere isolated act committed in the state by the defendant. It is also held that a foreign corporation should be subject to suit for acts within the forum which give rise to liability, i.e., that commission of a tort within the jurisdiction is sufficient to confer power on the court to render a valid *in personam* judgment.[2]

The cause of action alleged by Wolff, the real party in interest, arises in part from and is directly related to petitioner's activities in California. It is predicated on these facts: Wolff for more than 11 years has been and is now conducting a correspondence course in practical nursing, and during that period has advertised in magazines circulating throughout the United States and has thereby built up a valuable and lucrative business; more than 30,000 have enrolled in his courses; in his advertising Wolff has used his

[2]See *Hess* v. *Pawloski*, 274 U.S. 352 [47 S.Ct. 632, 71 L.Ed. 1091]; *Smyth* v. *Twin State Improvement Corp.*, 116 Vt. 569 [80 A.2d 664, 25 A.L.R.2d 1193]; *Nelson* v. *Miller*, 11 Ill.2d 378 [143 N.E.2d 673]; *Painter* v. *Home Finance Co.*, 245 N.C. 576 [96 S.E.2d 731]; *Johns* v. *Bay State Abrasive Products Co.*, 89 F.Supp. 654; 22 Cal.Jur.2d 454, § 38; 34 Cal. L. Rev. 331, 337-340; 5 Stan. L. Rev. 505; 50 Mich. L. Rev. 763, 765; 100 U. of Pa. L. Rev. 598, 600; 26 N.Y.U. L. Rev. 713; 36 Minn. L. Rev. 264, 265; 21 Univ. of Cin. L. Rev. 71, 72; 56 Dickinson L. Rev. 257, 260.

true name as "LEON WOLFF, DIRECTOR," and "L. WOLFF"; about July, 1958, petitioner commenced a competitive business unfairly using advertising substantially similar to that used by Wolff; it has sent brochures copied from Wolff's brochures to prospective students in California and other states; and it has used the name "J. LOU WOLF, NURSING DIRECTOR," and "J. LOU WOLF, SUPERINTENDENT OF TRAINING," when no such person is connected with petitioner. Petitioner's activities, under the allegations of the complaint, constitute continuing acts of unfair competition occurring in California and adversely affecting the business of the real party in interest. In *Hanson* v. *Denckla, supra,* 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283, 1296], the court pointed out that an act done by a nonresident in the state of the forum may be a sufficient basis of the forum's jurisdiction in an action arising out of that act.

The concept of "doing business" is applied whether the action is in tort or in contract.[3] Under section 411, subdivision 2 of the Code of Civil Procedure jurisdiction of a foreign corporation may be obtained if it is doing business in this state. "The general principles upon which corporations are held liable for their tortious acts and those of their agents and representatives apply to foreign corporations. A foreign corporation is not emancipated from liability for its wrongs because it is foreign. Like any foreigner, it is liable under the laws of the local state for torts committed there, and is amenable to proceedings in a court of equity having jurisdiction, for relief against its fraudulent or illegal acts." (23 Am.Jur. 125, § 122.)

It is not necessary at bar to say that the mere solicitation rule has been repudiated *in toto.* The facts show solicitation plus continuous, regular, systematic activity in the state not only in solicitation but also in arranging for and carrying

---

[3]See *Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134 [214 P.2d 541]; *Koninklijke L. M.* v. *Superior Court,* 107 Cal.App.2d 495 [237 P.2d 297]; *Gordon Armstrong Co.* v. *Superior Court,* 160 Cal.App. 2d 211 [325 P.2d 21]; *Smyth* v. *Twin State Improvement Corp.,* 116 Vt. 569 [80 A.2d 664, 25 A.L.R.2d 1193]; *Nelson* v. *Miller,* 11 Ill.2d 378 [143 N.E.2d 673, 676]; *Chapman Chemical Co.* v. *Taylor,* 215 Ark. 630 [222 S.W.2d 820]; *Painter* v. *Home Finance Co.,* 245 N.C. 576 [96 S.E. 2d 731]; *Woodworkers Tool Works* v. *Byrne,* 9 Cir., 191 F.2d 667; *WSAZ, Inc.* v. *Lyons,* 6 Cir., 254 F.2d 242; *Green* v. *Equitable Powder Mfg. Co.,* 99 F.Supp. 237; *Perkins* v. *Louisville & N. R. Co.,* 94 F.Supp. 946; *Johns* v. *Bay State Abrasive Products Co.,* 89 F.Supp. 654, 658; 50 Mich.L.Rev. 763, 764; 100 U. of Pa. L.Rev. 598, 600; 36 Minn.L.Rev. 264, 266; 56 Dickinson L. Rev. 257, 261.

on the courses of instruction; there is "solicitation plus" as distinguished from casual, isolated contacts or transactions. Petitioner has actively undertaken to promote the market for its courses in California. Its solicitation is carried on with one end in view: the promotion and increase of the sales of its courses to persons in California. Its activities in California create obligations therein. (*International Text Book Co.* v. *Pigg*, 217 U.S. 91 [30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.N.S. 493]; *International Text Book Co.* v. *Mueller*, 149 Ill.App. 509; *Air Conditioning Training Corp.* v. *Majer*, 324 Ill.App. 387 [58 N.E.2d 294]; *International Text Book Co.* v. *Gillespie*, 229 Mo. 397 [129 S.W. 922].) It reaps the benefits from the courses given to students in California and has access to our courts to enforce any rights arising out of its transactions here. (*Borgward* v. *Superior Court*, 51 Cal. 2d 72, 78-79 [330 P.2d 789].) Its solicitation was, and is, systematic and continuous in numerous magazines. There is a continuous shipment of material into and from California. Its regular and systematic solicitation produces a flow of business in California. Its contracts with its students, whether originating in California or not, are performed here for a money consideration derived from residents of California. Moreover, it is allegedly conducting its operations by methods which are calculated and intended to infringe on the rights of Wolff and injure his business by deceptive and unfair competition. The facts meet the test of doing business laid down by the Supreme Court of the United States and followed by the Supreme Court of California, i.e., petitioner has such minimum contacts in California that the maintenance of the action does not offend "traditional notions of fair play and substantial justice."

The petition alleges petitioner is engaged in interstate commerce and that to subject it to suit in Califorina would result in an undue burden on interstate commerce. The point is devoid of merit. (*West Publishing Co.* v. *Superior Court*, 20 Cal.2d 720, 727 [128 P.2d 777]; *Winfield* v. *United Fruit Co.*, 135 Cal.App.Supp. 791 796-799 [24 P.2d 247].) █ A state may not exclude a corporation engaged in interstate commerce yet it may subject it to the jurisdiction of the state. (*International Harvester Co.* v. *Kentucky*, 234 U.S. 579 [34 S.Ct. 944, 58 L.Ed. 1479, 1483].) █ In the absence of serious inconvenience to the defendant or other equitable considerations, there is no constitutional limitation precluding assump-

84

tion of jurisdiction over transitory causes of action by courts of a state in which a foreign corporation is doing business. (*Jeter* v. *Austin Trailer Equipment Co.*, 122 Cal.App.2d 376, 389 [265 P.2d 130].)

We hold that petitioner was doing business in this state in such a manner and to such an extent as to make it amenable to service of process and to the jurisdiction of the superior court, and that assumption of jurisdiction over it is consistent with due process.

The alternative writ heretofore issued is discharged; a peremptory writ is denied.

Shinn, P. J., and Wood (Parker), J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 15, 1959. Schauer, J., and McComb, J., were of the opinion that the application should be granted.