[Civ. No. 23988.   Second Dist., Div. One.   Dec. 30, 1959.]

EMSCO PAVEMENT BREAKING CORPORATION, Appellant, v. THE CITY OF LOS ANGELES et al., Defendants; ANDERS-JAHRE AND COMPANY (a Corporation), Respondent.

762

McCutchen, Black, Harnagel & Greene, McCutchen, Black, Harnagle & Shea, Philip K. Verleger, Robert A. Fletcher and Bruce I. Rauch for Appellant.

Lillick, Geary, McHose, Roethke & Myers, William A. C. Roethke and Anthony Liebig for Respondent.

FOURT, J.—This is an appeal from an order granting a motion to quash the service of summons and complaint upon respondent and defendant, Anders-Jahre and Company.

A résumé of the facts is as follows:

In the latter part of 1957 appellant was engaged in the removal of the concrete piers of a certain bridge which was located across the entrance to the west basin of Los Angeles Harbor. On September 11 of that year, the vessel "JANUS," owned by respondent, attempted to enter the west basin while

tied to and assisted by the tug "LONG BEACH." The "LONG BEACH" was owned and operated by defendant, WILMINGTON TRANSPORTATION COMPANY. At all times during the event in question, a compulsory pilot in the employment of defendant, CITY OF LOS ANGELES, was on the bridge of the "JANUS" performing his duties. While both vessels were in the process of entering the west basin the tug "LONG BEACH" struck one of the concrete piers of the bridge and caused the pier to topple and fall beneath the surface of the water. Appellant filed an action claiming damages resulting from the negligence and trespass on the part of defendants. The summons and complaint were served upon respondent Anders-Jahre and Company, by personal delivery to an officer of W. H. Wickersham and Company, Inc., a company which acted as agent for the owners of the "JANUS" during the time the ship was in Los Angeles Harbor. A motion to quash was filed on behalf of respondent on the grounds that at the time of such delivery respondent was not doing business in the State of California and that W. H. Wickersham and Company, Inc., was not, at the time of service, an agent, officer or manager of respondent and was not authorized to receive service of the summons and complaint. The motion was granted upon the latter ground.

Subsequently, appellant obtained an order from a superior court commissioner providing that service be made upon respondent by personal delivery of the summons and complaint to the Secretary of State. Service was effected in that fashion. A second motion to quash was filed and served on behalf of respondent on the grounds that respondent was not doing business in the State of California at the time of such service and that the service of process was improper and of no legal effect. This motion was based upon a memorandum of points and upon the affidavits of one Frithjof Bettum, a member of the board of directors of respondent and one Roy Blydenburgh, Secretary and General Manager of W. H. Wickersham and Company, Inc. Additional memoranda of points and authorities were filed by respondent and by appellant and reference was made by appellant to respondent's answers to appellant's interrogatories which had previously been filed in the action.

The facts relied upon by appellant to show that respondent was amenable to process in the State of California at the time service was effected are contained in the affidavits and in the answers to interrogatories referred to above. An examination

of those affidavits and answers to interrogatories discloses among other things the following:

That respondent, Anders-Jahre and Company is a corporation existing under the laws of the Kingdom of Norway with its principal place of business in Sandefjord, Norway.

Respondent's business consists of the ownership and operation of steamships in domestic and foreign trade, including the "JANUS." Four vessels owned by respondent, other than the "JANUS," called at California ports from March 12, 1951, up to and including the date of the accident in question as well as some calls which were made subsequent to said accident. Over 20 calls were made by those vessels to California ports. Substantial quantities of cargo were discharged in California from the various vessels owned by respondent.

Interrogatories were propounded by the appellant to Anders-Jahre and Company, the first of which was: "With respect to each of the visits of the vessels referred to in Paragraph 7 of the affidavit of Frithjof Bettum filed with the defendant's Motion to Quash Service of Summons, please state: the amounts of cargo discharged at Los Angeles or San Francisco on each of the occasions referred to in said Paragraph 7 by each of the vessels referred to in Paragraph 7." The "Answers to Interrogatories" set forth the following:

"(a)—*Cargo discharged*:

| "*Vessel* | *Port* | *Dates* | *Amount of Cargo* |
|---|---|---|---|
| M/s "Jakara" | Los Angeles | 2/21- 2/23-55 | 333 cars |
| —"— | San Francisco | 2/24- 2/25-55 | 253 cars— 20 tractors |
| —"— | Los Angeles | 5/31- 6/ 1-55 | 457 cars |
| —"— | San Francisco | 6/ 6- 6/ 9-55 | 271 " |
| —"— | —"— | 10/15-10/17-55 | 745 " |
| —"— | —"— | 3/ 5- 3/ 7-56 | 663 cars—115 tons peatmoss. |
| —"— | Los Angeles | 4/ 6- 4/ 7-56 | called for bunkers |
| —"— | San Francisco | 7/ 9- 7/10-56 | 583 cars |
| —"— | Los Angeles | 8/14-56 | called for bunkers |
| —"— | San Francisco | 11/ 7-11/ 8-56 | 485 cars |
| —"— | Los Angeles | 3/14- 3/16-57 | 575 " |
| —"— | San Francisco | 7/11- 7/13-57 | 568 " |
| —"— | —"— | 11/ 9-11/10-57 | 487 cars—201 cases spare parts. |
| —"— | —"— | 1/27- 1/29-58 | 645 cars—184 cases spare parts. |
| —"— | San Pedro | 2/ 8-58 | called for bunkers |

| "Vessel M/t | Port | Dates | Amount of Cargo |
|---|---|---|---|
| "Kosmos V" | Richmond | 11/ 3-11/ 5-55 | 24.441 tons crude oil |
| –"– | San Pedro | 11/ 6-11/ 7-55 | 6.157 tons fuel oil (loaded) |
| M/t "Janega" | Martinez | 6/ 2- 6/ 4-58 | 15.560 tons motor spirit. |
| M/t "Jasmin" | Richmond | 3/12- 3/17-51 | 14.641 tons crude. |
| –"– | San Francisco | 5/29- 6/ 4-51 | 13.978 " fuel oil (loaded). |
| –"– | Richmond | 1/17- 1/21-52 | 14.410 tons crude oil. |
| –"– | Los Angeles | 1/22- 1/24-52 | loaded." |

At all times while respondent's vessels were in California the crew members were in the employment and pay of respondent. Also, respondent hired, supervised and directed the master and crew of each vessel. Large quantities of fuel oil were purchased when respondent's vessels called at California ports. The crews of the various vessels were paid and permitted to go ashore in California by respondent. Respondent issued bills of lading covering various cargoes scheduled to be unloaded at California ports.

Various California companies were employed as agents to act on behalf of respondent's vessels. These companies included Kerr Steamship Company, Inc.; General Steamship Corporation; Williams; Diamond and Company; and W. H. Wickersham and Company, Inc. The latter was retained to act as agent in assisting the "JANUS" on the occasion of its call at Los Angeles Harbor in September of 1957.

According to his affidavit, Roy Blydenburgh is the secretary and general manager of W. H. Wickersham and Company, Inc., a corporation which acts as port agent in Los Angeles on behalf of several foreign and domestic shipowners. The duties of a port agent include arranging for the replenishing of provisions, water and fuel, the procurement of supplies and parts, the payment of docking, pilotage and stevedoring fees and other like tasks.

It appears from the record that some additional tasks were performed for respondent by W. H. Wickersham and Company, Inc., in overseeing or in some way assisting the completion of temporary repairs which were made on the "JANUS" in Los Angeles.

The trial court did not specify the ground for its order granting respondent's motion to quash. ■ It is an established rule that:

"An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. *When the evidence is conflicting,* it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. ■ In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review." (Emphasis added.) (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349] and cases cited therein.)

■ It is also true that when the evidence is *not* conflicting, the reviewing court is not bound by the findings based thereon. (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 81 [346 P.2d 409].) There is no dispute as to what activities actually occurred in California. The pivotal question is as to the legal consequences that necessarily flow from these activities.

■ In *Jeter* v. *Austin Trailer Equipment Co.,* 122 Cal. App.2d 376 [265 P.2d 130], the issue before the court was whether a foreign corporation was amenable to services of process by serving the Secretary of State under the provisions of section 6501 of the Corporations Code. In deciding the question, the court pointed out at page 381 that:

"The inquiry as to whether a corporation is 'doing business' has three significant aspects. It may determine (1) the power of the state to impose local taxation, (2) whether the corporation falls within the state's regulatory power, or (3) whether jurisdiction exists for service of process. (*Ruppert* v. *Morrison,* 117 Vt. 83 [85 A.2d 584, 588]; 23 Am.Jur., Foreign Corporations, p. 339; Rest., Conflict of Laws, § 167; 16 U.Chic. L.Rev., 523, 525-526.) ■ The degree of activity or contact which is required varies according to the purpose for which the foreign corporation is sought to be subjected to local laws. (*Thew Shovel Co.* v. *Superior Court,* 35 Cal.App.2d 183 [95 P.2d 149]; 23 Am.Jur., Foreign Corporations, § 362.)

Thus, a state may have jurisdiction over a foreign corporation by virtue of its local activities for purposes of service of process, whilst lacking the power to tax or regulate the same corporation. (*Fielding* v. *Superior Court,* 111 Cal.App.2d 490, 494 [244 P.2d 968]; *Liquid Veneer Corp.* v. *Smukler,* 90 F.2d 196; *Thurman* v. *Chicago, M. & St. P. R. Co.,* 254 Mass. 569 [151 N.E. 63, 46 A.L.R. 563].)    ■ A less strict meaning may be attributed to the phrase 'doing business' where the question relates simply to whether a state court has jurisdiction than where taxation or regulatory statutes are involved. (Citing cases.)''

The pertinent provision of section 411 of the Code of Civil Procedure provides:

''The summons must be served by delivering a copy thereof as follows:

''.        .        .        .        .        .        .        .        .        .

''2. *If the suit is against a foreign corporation,* or a non-resident joint stock company or association, *doing business in this State;* in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code.'' (Emphasis added.)

Corporations Code, section 6501, provides in part:

''Service on Secretary of State; Court Order; Number of Copies of Process and Order. . . . or if the agent designated is no longer authorized to act, or if no agent has been designated and if no one of the officers or agents of the corporation specified in Section 6500 can be found after diligent search and it is so shown by affidavit to the satisfaction of the court or judge, then the court or judge may make an order that service be made by personal delivery to the Secretary of State or to an assistant or deputy secretary of state of two copies of the process together with two copies of the order, except that if the corporation to be served has not filed the statement required to be filed by Section 6403 then only one copy of the process and order need be delivered but the order shall include and set forth an address to which such process shall be sent by the Secretary of State.''

The pertinent provision of section 6504 of the Corporations Code provides:

''*A foreign corporation which has transacted intrastate business in this State* and has thereafter withdrawn from business in this State *may be served with process in the manner*

*provided in this chapter in any action brought in this State arising out of such business,* whether or not it has ever complied with the requirements of Chapter 3 of this part." (Emphasis added.)

Section 6203 of the Corporations Code provides:

" *'Transact intrastate business'* means entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce." (Emphasis added.)

The court in *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court,* 51 Cal.2d 72 [330 P.2d 789] at page 76 stated:

"Section 6203 defines, not the words 'doing business in this State,' but the words 'transact intrastate business.' Since the Legislature was dealing specifically with the definition of terms, had it meant the two phrases to be equivalent, it would have said so. Moreover, by excluding acts done by a foreign corporation in this state in interstate or foreign commerce from its definition of the words 'transact intrastate business,' it clearly recognized that a corporation may do business in this state without transacting intrastate business.

"Nor does section 6300 afford any basis for departing from the well established meaning of 'doing business in this State,' ...

". . . Section 6300 was based on former Civil Code, section 407 . . . (which) referred only to the acts required to qualify to conduct intrastate business and made clear that foreign corporations engaged solely in interstate or foreign commerce were not required so to qualify. It is no way indicated, however, that such corporations doing business in this state were not subject to service of process here."

Therefore, if a foreign corporation *is* "doing business in this State," no inquiry need be made as to whether the business is of an *inter* or *intrastate nature.*

Although the service of process in *Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77 [346 P.2d 409], was pursuant to section 6500 of the Corporations Code (i.e., service on agent), the rationale is equally applicable to service pursuant to section 6501 of the Corporations Code. The court stated on page 82:

"The validity of the service of process pursuant to section (6500) of the Corporations Code depends first on whether the foreign corporation is 'doing business in this State' within the meaning of the statute. (Code Civ. Proc., § 411, subd. 2.)

As this court said in *Henry R. Jahn & Son* v. *Superior Court*, 49 Cal.2d 855, at page 858 [323 P.2d 437] :

" 'That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause.' In essence, the statutory term 'is synonymous with the power of the state to subject foreign corporations to local process.' (*Eclipse Fuel Eng. Co.* v. *Superior Court*, 148 Cal.App.2d 736, 738 [307 P.2d 739] ; see also *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court*, 51 Cal.2d 72, 75 [330 P.2d 789] ; *Gordon Armstrong Co.* v. *Superior Court*, 160 Cal.App.2d 211, 218 [325 P.2d 21].) "

The record negates any contention that respondent had engaged in but sporadic transactions within the state. Respondent's vessels have called at California ports from March 12, 1951, up to and including the date of the accident in question as well as calls which were made subsequent to said accident some 20 times. What constitutes a regular course of business dealings will, of course, vary with the type of business involved. Certainly the activities of respondent are more significant than the minimal contacts deemed sufficient in *McGee* v. *International Life Insurance Co.*, 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223], where the foreign corporation elected to deal with the insured only by mail. In *James E. Murphy* v. *Arrow Steamship Co., Inc.*, 1954 A.M.C. 1423 (E.D.Pa. 1954), defendant foreign corporation was held to be "doing business" although only seven calls of the foreign corporation's vessels had been made in a period of four years.

Whether a state may constitutionally assume jurisdiction involves a balancing of many factors.

It was said in *Fisher Governor Co.* v. *Superior Court of the City & County of San Francisco*, 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1] (decided December 8, 1959), as follows :

"The interest of the state in providing a forum for its residents (*McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 223 [78 S.Ct. 199, 2 L.Ed.2d 223]) or in regulating the business involved (*Travelers Health Assn.* v. *Virginia*, 339 U.S.

643, 647-648 [70 S.Ct. 927, 94 L.Ed. 1154]) ; the relative avail-
ability of evidence and the burden of defense and prosecution
in one place rather than another (*McGee* v. *International
Life Ins. Co., supra,* 355 U.S. 220, 223-224; *Henry R. Jahn &
Son* v. *Superior Court, supra,* 49 Cal.2d 855, 861-862; *Carl
F. W. Borgward, G.M.B.H.* v. *Superior Court, supra,* 51 Cal.
2d 72, 79; *Cosper* v. *Smith & Wesson Arms Co., supra,* 53
Cal.2d 77, 83); the ease of access to an alternative forum
(*Travelers Health Assn.* v. *Virginia, supra,* 339 U.S. 643, 648-
649); the avoidance of multiplicity of suits and conflicting
adjudications (*Henry R. Jahn & Son* v. *Superior Court,
supra,* 49 Cal.2d 855, 862; *Carl F. W. Borgward, G.M.B.H.*
v. *Superior Court, supra,* 51 Cal.2d 72, 79; *Gordon Armstrong
Co.* v. *Superior Court,* 160 Cal.App.2d 211, 219 [325 P.2d
21]; see also *Atkinson* v. *Superior Court,* 49 Cal.2d 338, 347-
348 [316 P.2d 960]); and the extent to which the cause of
action arose out of defendant's local activities (*International
Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 319; *McGee* v.
*International Life Ins. Co., supra,* 355 U.S. 220, 223; *Hanson*
v. *Denckla,* 357 U.S. 235, 251-253 [78 S.Ct. 1228, 2 L.Ed.2d
1283]; *Henry R. Jahn & Son* v. *Superior Court, supra,* 49
Cal.2d 855, 860-861, and cases cited; *Carl F. W. Borgward,
G.M.B.H.* v. *Superior Court, supra,* 51 Cal.2d 72, 79; *Cosper*
v. *Smith & Wesson Arms Co., supra,* 53 Cal.2d 77, 83;
*Gordon Armstrong Co.* v. *Superior Court, supra,* 160 Cal.
App.2d 211, 219-220; *Florence Nightingale School of Nursing*
v. *Superior Court,* 168 Cal.App.2d 74, 81-83 [335 P.2d 240];
*Holtkamp* v. *States Marine Corp.,* 165 Cal.App.2d 131, 138-
139 [331 P.2d 679]; see also *Owens* v. *Superior Court,* 52
Cal.2d 822, 830-831 [345 P.2d 921]) are all relevant to
this inquiry. (See 108 U. of Pa.L.Rev. 131.)''

If we apply the aforementioned factors to the
present case the record discloses that the plaintiff (Emsco),
and the defendants, city of Los Angeles and Wilmington
Transportation Company are California residents; only re-
spondent is a nonresident. The physical evidence with refer-
ence to the accident is located in California; to prosecute the
action other than in California might well require a trip to
Norway; if respondent were not subject to the jurisdiction
of the California courts, any determination of the issues
would not be res judicata upon it, and there is a probability
of conflicting adjudications; there would of course be multi-
plicity of suits if plaintiff was required to bring a second
action against respondent; the cause of action arose out of re-

spondent's local activities (i.e., entering Los Angeles Harbor).

Since respondent *is* doing business in California, there is no issue as to whether section 6504 of the Corporations Code is applicable.

We believe that it was error for the court to grant the motion to quash the service of summons and complaint.

The order is reversed.

Wood, P. J., and Lillie, J., concurred.