[Civ. No. 26993.   Second Dist., Div. Three.   May 17, 1963.]

AMERICAN CONTINENTAL IMPORT AGENCY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; PASADENA INVESTMENT COMPANY, Real Party in Interest.

318

Paul, Hastings, Janofsky & Walker, Lee G. Paul, Frank D. Boren and Hiram W. Kwan for Petitioner.

No appearance for Respondent.

McLaughlin & McLaughlin and James A. McLaughlin for Real Party in Interest.

FORD, J.—Petitioner American Continental Import Agency, a limited association organized pursuant to the laws of the Féderal Republic of Germany,[1] seeks a writ of mandate to compel the Superior Court of Los Angeles County to enter its order quashing service of summons in an action brought by Pasadena Investment Company, a corporation, the real party in interest in this proceeding. (See Code Civ. Proc., § 416.3.) Petitioner is also known as Aconia G.M.B.H. and Co., K.G., and reference will hereinafter be made to it as Aconia. Manero Aircraft Company, a corporation, Robert T. Rudesill, doing business as U.S. Fastener of California, and Airborne Freight Corporation were joined as defendants in that action. Service of process on Aconia was made by means of personal service in the County of Los Angeles on Tadeus Kawalecki, a director of Aconia and its manager in charge of foreign imports. Aconia appeared specially and moved to quash the service of summons. Its motion was denied.

---

[1] With respect to the question here presented, both parties to this proceeding consider the association to be in the nature of a corporation.

In the first cause of action of the complaint it was alleged that on or about December 22, 1961, the plaintiff Pasadena Investment Company and defendant Rudesill, doing business as U. S. Fastener of California, entered into a written agreement for the purchase by the plaintiff of that defendant's accounts receivable and that a notice of assignment was filed in the office of the County Recorder of the County of Los Angeles on December 28, 1961. On January 17, 1962, for a valuable consideration certain accounts receivable and indebtedness owed to U.S. Fastener of California by Aconia were assigned to the plaintiff; the net amount due from Aconia was $22,812.49. On January 31, 1962, a similar assignment was made; the net amount due from Aconia under the assigned accounts receivable and indebtedness was $29,-537.45. Aconia had not paid to plaintiff any of the indebtedness and accounts receivable so assigned. It was further alleged that the defendants "have at all times known of the assignment and sale of all of such accounts to plaintiff, but that defendants Aconia and U. S. Fastener of California have caused the monies due and owing on the above described accounts to be paid to defendants herein by Aconia" in amounts unknown to the plaintiff. An accounting was sought. In the second cause of action it was alleged that there was a controversy "between plaintiff, on the one hand, and defendants on the other hand, in that plaintiff claims that it is entitled to collect the sums unpaid on account of all of the invoices and accounts hereinabove described, and the defendants dispute plaintiff's said claims and contend and assert that the defendants, with the exception of defendant Aconia, are entitled to collect and receive said monies, and the defendant Aconia agrees with the contentions of said defendants."

In support of its motion to quash service of summons the petitioner filed an affidavit of Tadeus Kawalecki in which it was stated that the principal place of business of Aconia was in Munich, Germany, that it has never done business in the State of California, and that it has never maintained any representative of any kind within the State of California or within any other part of the United States. It was further stated: "Aconia is engaged exclusively in the business of importing aircraft parts and equipment into Germany for resale within Germany. Aconia has never solicited such import business in the State of California, the United States of America, its Territories or Possessions. All said aircraft parts

and equipment imported from the United States by Aconia have been purchased pursuant to purchase orders issued in Germany by Aconia to United States suppliers. Said purchase orders followed and resulted from negotiations all of which were conducted in Germany. Deliveries in Germany pursuant to such purchase orders are made by United States suppliers directly to German customers of Aconia. Payment to the United States suppliers for said aircraft parts and equipment are made by Aconia through German banking facilities after receipt, inspection and acceptance of said aircraft parts and equipment in Germany by German customers of Aconia.'' Mr. Kawalecki further stated that at the time of service of the summons and complaint he was in California ''for the sole purpose of assuring delivery of aircraft parts and equipment from California suppliers pursuant to prior purchase orders issued in and mailed from Germany to California by Aconia, said delivery, pursuant to said purchase orders, having been delayed as a result of controversies involving U. S. Fastner [sic] of California, a California concern, which was to have supplied Aconia's customers with aircraft parts and equipment. . . . Affiant as of the date of this affidavit has made four trips to California, including the one mentioned above. Each such trip by affiant was solely to assure delivery of aircraft parts and equipment pursuant to prior purchase orders long overdue issued in and mailed from Germany to California by Aconia. Such trips represent the only trips made by any representatives of Aconia to California.''

In an affidavit of A. H. Bergson, a director and officer of Aconia, who accompanied Mr. Kawalecki to California in June 1961, it was stated that Mr. Kawalecki's four trips to California were made for the purpose of obtaining assurance from representatives of U. S. Fastener that the latter concern would deliver aircraft parts and equipment to Aconia's customers pursuant to prior purchase orders issued in and mailed from Germany by Aconia to U. S. Fastener, the trips being necessary ''soley [sic] by reason of the failure of U. S. Fastener to make delivery on said purchase orders. . . .''

One of the affidavits submitted in opposition to the motion was that of the defendant Rudesill. Therein it was stated that the total amount of sales made to Aconia by U. S. Fastener in 1961 and in a part of 1962, while Mr. Rudesill ''was operating the business of selling and exporting materials

primarily used in the construction of airplanes,'' was in the approximate amount of $600,000.

While other affidavits were filed on behalf of the petitioner and on behalf of the real party in interest, the affidavits heretofore noted fairly set forth the factual situation upon the basis of which the question presented to this court is to be resolved. Such resolution must be based upon a consideration of those facts in the light of the reasoning of *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855 [323 P.2d 437], and *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court,* 51 Cal.2d 72 [330 P.2d 789]. (See Traynor, *Is This Conflict Really Necessary* (1959) 37 Tex.L.R. 657, 658.)

In *Henry R. Jahn & Son* v. *Superior Court, supra,* 49 Cal.2d 855, at page 858, the governing principle was stated as follows: ''The statute authorizes service of process on foreign corporations that are 'doing business in this State.' That term is a descriptive one that the courts have equated with such minimum contacts with the state 'that the maintenance of the suit does not offend ''traditional notions of fair play and substantial justice''' (*International Shoe Co.* v. *Washington,* 326 U. S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 102, 161 A.L.R. 1057, 1061].) Whatever limitation it imposes is equivalent to that of the due process clause. ''[D]oing business'' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process.' [Citations.]''

In the *Jahn* case, the court made the further statement (49 Cal.2d, at pages 859-860): ''Jahn's purchase of goods in this state is a regular part of its business. It nevertheless contends that it is not amenable to suit here, invoking *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 U. S. 516 [43 S.Ct. 170, 67 L.Ed. 372]. The United States Supreme Court, however, has advanced beyond the presence theory of jurisdiction underlying that case. (*McGee* v. *International Life Ins. Co.,* 355 U. S. 220 [78 S.Ct. 199, 200, 2 L.Ed.2d 223] ; see also *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316-317 [66 S.Ct. 154, 90 L.Ed. 95, 101-102, 161 A.L.R. 1057, 1062].) Under the minimum contacts test of the *International Shoe* case regular sales solicitation alone can constitute doing business rendering the foreign corporation amenable to process in actions engendered by such activities. [Citations.] Since there is no distinction for jurisdictional purposes between regular selling and regular buying [citations],

the *Rosenberg* case is as obsolete for the one as for the other. Many cases anteceding the *Rosenberg* case and many since the *International Shoe* case have sustained jurisdiction on the basis of the defendant's purchasing activities in the state. [Citations.]

■ "The Supreme Court has emphasized its departure from the presence test by the significance it now attaches to the fact that the cause of action arises out of the defendant's contacts with the state asserting jurisdiction. . . . ■ 'But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.' (*International Shoe Co. v. Washington*, 326 U. S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 104. 161 A.L.R. 1057, 1063].) ''

■ In the present case Aconia's purchases constituted a systematic and continuous course of business and were made in a very substantial amount. Moreover, there was more than the mere purchase of California goods pursuant to orders originating in Germany; on four occasions Mr. Kawalecki came to California for the purpose of expediting compliance by the vendor with the agreements for the sale of articles. (Cf. *Dungan, Hood & Co. v. C. F. Bally, Ltd.*, 271 F. 517, 519.) Although such efforts were subsequent to the inception of the contractual relationship between Aconia and U. S. Fastener, they were not without significance in that the purpose was to protect and enforce Aconia's rights. It is a reasonable assumption that such acts were of value to Aconia in obtaining the performance of the contractual obligations undertaken by the vendor. (See Note 108 U. Pa.L.Rev. 131, 139-141.) The litigation instituted by Pasadena Investment Company arose by virtue of assignments to it of claims of U. S. Fastener of California which had their origin in the assignor's contractual relationship with Aconia. Such obligations fall within the category of those which "arise out of or are connected with the activities within the state." (See *International Shoe Co. v. Washington*, 326 U. S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 104, 161 A.L.R. 1057, 1063].) The several-sided controversy with respect to the rights to receive payments due pursuant

to Aconia's contractual obligations should be settled, if possible, in one action, prosecuted either in this state or in Germany. Aside from the problem of obtaining jurisdiction over all of the parties in a German court, inasmuch as most of the relevant facts with respect to the present controversy have their origin in California the burden on the plaintiff and the defendants, other than Aconia, of prosecuting or defending in Germany would far outweigh the burden on Aconia of defending here. (See *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court, supra,* 51 Cal.2d 72, 79.)[2]

For the reasons stated hereinabove the conclusion must be reached that ''the quality and nature of . . . [Aconia's] activity in relation to the fair and orderly administration of the laws'' fully justifies subjecting Aconia to the jurisdiction of the courts of this state. (See *International Shoe Co.* v. *Washington, supra,* 326 U.S. 310, 319 [66 S.Ct. 154, 90 L.Ed. 95, 104, 161 A.L.R. 1057, 1063].)

The alternative writ is discharged and the peremptory writ is denied.

Shinn, P. J., concurred.

FILES, J.—I concur in the denial of the petition upon the authority of *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855 [323 P.2d 437]. There is a valid basis for distinguishing the two cases on their facts. *Jahn* was an action for relief against acts of unfair competition committed in California for the purpose of destroying a California company. Our case is an action for the price of goods shipped to a foreign buyer. Nevertheless, the ground upon which the Supreme Court placed the *Jahn* decision seems to cover this case too.

Petitioner's application for a hearing by the Supreme Court was denied July 10, 1963.

[2]In *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, it was said, at pages 222-223: ''Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jursdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'' (See also *Empire Steel Corp.* v. *Superior Court,* 56 Cal.2d 823, 834 [17 Cal.Rptr. 150, 366 P.2d 502].)