[Civ. No. 19157. First Dist., Div. One. Nov. 9, 1960.]

SUSAN ROXANNE THOMAS, a Minor, etc., Appellant, v. J. C. PENNEY COMPANY (a Corporation) et al., Defendants; FAIRYTALE CHILDREN'S WEAR, INC. (a Corporation), Respondent.

Condon, Dolgin & Page for Appellant.

Taft, Wright & Hopkins and Cranson L. Hopkins for Respondent.

COAKLEY, J. pro tem.*—The issue on this appeal is whether the respondent, a New York corporation, is subject to the jurisdiction of the courts of California.

The answer turns upon whether the respondent was "doing business" in California within the purview of Code of Civil Procedure, section 411, subdivision 2; or, more precisely, whether the assumption of jurisdiction over defendant violates the due process clause of the Fourteenth Amendment.

The trial court found for the respondent and granted its motion to quash service of process. The plaintiff below has appealed from that order. For the reasons hereinbelow stated we find it necessary to reverse the trial court's order quashing service of process.

### THE MATERIAL FACTS

Appellant is a three-year-old female suing through her guardian *ad litem* for damages arising out of burns suffered when the bathing suit she was wearing ignited and burst into flames upon contact with an automobile cigarette lighter.

The defendants are J. C. Penney Company, from whose Martinez, California, store the bathing suit was purchased; Keith Miller, manager of that store; J. P. Stevens & Company, Inc.; Dan River Mills, Inc.; and the respondent, Fairy-Tale Children's Wear, Inc., a New York corporation, the manufacturer of the bathing suit.

Plaintiff's affidavit in opposition to the motion to quash service alleges that, "Four of the five defendants are subject to the jurisdiction of California Courts. Only defendant Fairy-Tale questions jurisdiction." These allegations are nowhere disputed by respondent. Fairy-Tale is charged with negligently manufacturing and furnishing a defective and dangerous bathing suit to prospective customers.

Following issuance of summons plaintiff applied to the court below for service upon Fairy-Tale in New York, by mail, through the Secretary of State of California, as provided in Code of Civil Procedure, section 411, subdivision 2 and Corporations Code, section 6501. Fairy-Tale appeared specially for the sole purpose of moving to quash service upon the grounds that neither at the time of the accident nor at the present time "was this corporate defendant doing business within the State of California, nor did it have officers or agents within the State of California, and further that it

---

*Assigned by Chairman of Judicial Council.

has not designated a statutory agent for service within the State of California and further is a corporation authorized under, by and pursuant to the laws of the State of New York.''

Plaintiff opposed the motion in writing. The matter was heard on affidavits, appellant's written interrogatories and Fairy-Tale's answers thereto. From these documents the following facts appear without dispute, as to the activities of Fairy-Tale insofar as doing business in California is concerned:

Fairy-Tale bathing suits are sold at retail by ''Several Chain Outfits with stores in California, having buying Offices in New York.'' Purchases by such chain organizations are made in various ways. In some instances the chains buy outright for their retail outlets through their New York offices or buyers. In other instances the chains send their retail outlets descriptive listings of Fairy-Tale merchandise following which the retail stores order directly from Fairy-Tale, or do so through the New York office of the chain. ''. . . other store buyers in California [not identified as chain or independents] . . . come to New York and purchase direct from our sales office . . . or from other sales agencies in the City.''

Fairy-Tale solicits orders in California through two independent sales organizations, which are incorporated and have offices in New York. One of these sales organizations is Catlin and Epstein. The record is silent as to the nature and extent of this firm's activities in California on behalf of Fairy-Tale. The record is also silent as to total sales of Fairy-Tale products in California.

The other New York firm which solicits business in California on behalf of Fairy-Tale is Sales Agents, Inc. One of Fairy-Tale's answers to interrogatories refers to Sales Agents as ''One of our representatives [who] . . . visits customers in California several times a year to secure orders, other than J. C. Penney.'' This representative also represents other manufacturers in the sale of their products in California. Fairy-Tale estimates that its distribution in California through Sales Agents is ''less than 20%'' of its total distribution of goods in this state. A representative of Sales Agents ''. . . frequent[s] Los Angles [sic] and San Francisco twice a year during September and February,'' and in Los Angeles he displays Fairy-Tale products in the Haywood Hotel and ''also visit[s] other smaller locations to show merchandise to individual firms.'' He also entertains Fairy-Tale customers while in California, at the expense of Sales Agents. Sales Agents

receives a commission of 5 per cent on orders obtained for Fairy-Tale. Its representation arrangement with Fairy-Tale is entirely oral and there are no restrictions placed on Sales Agents other than that Fairy-Tale's merchandise "must be sold at a price designated by Fairy-Tale on price tags attached to the garments." Sales Agents does not stock Fairy-Tale products, does not take title to the product, nor fill orders itself, nor receive payment from customers for Fairy-Tale products, nor has it a license or franchise from Fairy-Tale for sale or distribution of the latter's products. Neither firm owns shares of stock in the other and there are no officers, directors or employees common to both firms. Sales Agents sends Fairy-Tale "comments from time to time as to public acceptance." Payment for merchandise is made directly to Fairy-Tale and not to its representatives. Fairy-Tale does not ship on consignment or conditional sale. It owns no interest in real or personal property in California, has no bank accounts here, has no office or employees in California, and has no representatives here other than Sales Agents and Catlin and Epstein.

Fairy-Tale's only paid advertising "concerning California" consists of illustrations of its styles in a J. C. Penney catalogue for which it pays J. C. Penney $30 for each style depicted and recommended for purchase to the various Penney branches throughout the United States, including those in California.

Finally, on the reverse side of the contract under which Fairy-Tale sold the bathing suit in question to Penney there is printed a statement that Fairy-Tale holds Penney harmless from all claims, including damages, attorneys' fees and costs arising out of any defects in merchandise delivered pursuant to the accompanying order.

## The Law

1. *This Court Is Not Bound by the Conclusions Drawn by the Trial Court From Undisputed Facts.*

". . . when the evidence is *not* conflicting, the reviewing court is not bound by the findings based thereon. (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 81 [346 P.2d 409].) There is no dispute as to what activities occurred in California. The pivotal question is as to the legal consequences that necessarily flow from these activities." (*Emsco Pavement etc. Corp.* v. *City of Los Angeles* (1959), 176 Cal. App.2d 760, 766 [1 Cal.Rptr. 814].)

## 2. *"Doing Business"* for *Jurisdictional Purposes.*

 The present state of the law, and the reasons therefor are expressed in the following quotations from *McGee* v. *International Life Insurance Co.* (1957), 355 U.S. 220, 222-224 [78 S.Ct. 199, 2 L.Ed.2d 223] : "Since *Pennoyer* v. *Neff,* 95 U.S. 714 [24 L.Ed. 565], this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. . . . More recently in *International Shoe Co.* v. *Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' [*Id.,* at 316.]

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

"Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. . . . [Citing cases.] The contract was delivered in California, the premiums were mailed from there and the insured was a resi-

dent of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process. . . . [Citing cases.] There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear.''

In *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], the court said with reference to the "minimum contacts" requirement of due process that:

"Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. . . .

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. . . . [Citing cases.]''

The briefs of the appellant and the respondent do not mention the McGee case. The respondent quotes from *International Shoe,* but makes no effort to distinguish it from our case. The reason perhaps is because the distinctions are not substantial.

The principal distinction in *International Shoe* was the fact that the shoe company directly employed salesmen who resided in the State of Washington, solicited orders therein on a commission basis, and on occasion rented temporary or

permanent display space, being reimbursed for rental payments by the defendant shoe company. It is clear, however, that the result in that case did not turn primarily on the number or residence of the salesmen employed by International Shoe Co. within the state. Rather it turned on the fact of continuous sales activity in the state, that the defendant could avail itself of the courts of Washington to enforce its rights, and, finally, the relative convenience in the choice of forums. And see *Cosper* v. *Smith & Wesson Arms Co., supra,* in which the court held that through its so-called independent "manufacturers representatives" the defendant received all of the advantages it would have enjoyed if it conducted business through its own offices or paid agents in California. Such is the defendant's position in this case through Sales Agents.

The only distinction in *McGee* which may call for discussion was the presence therein of a California statute, the validity of which the United States Supreme Court upheld, which subjects foreign corporations to suit in California on insurance contracts with residents of this state, even though such corporations cannot be actually served with process within its borders. But it is axiomatic that if such a statute violated constitutional guarantees, the court would have declared it void. (*Pennoyer* v. *Neff*, 95 S.Ct. 714 [24 L.Ed. 565]; *Adkins* v. *Children's Hospital*, 261 U.S. 525 [43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238]; 16 C.J.S. 293; 11 Cal.Jur.2d 376.)

From an examination of Fairy-Tale's activities in California [see statement *supra*] it is apparent that it "exercises the privilege of conducting activities" in, has the necessary "minimum contacts" with, and "enjoys the benefits and protection of the laws" of California, to the extent that "it [is] reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought . . . [here]" (*International Shoe*).

Our conclusion that jurisdiction lies is reached without reliance upon the hold-harmless agreement from Fairy-Tale to the Penney Company. We express no opinion as to the extent, if any, that the result should be influenced by that agreement.

We turn now to a consideration of recent California Supreme Court cases on this subject. In support of its position that Fairy-Tale is subject to the jurisdiction of the California court, appellant cites *Henry R. Jahn & Son* v. *Superior Court* (1958), 49 Cal.2d 855 [323 P.2d 437]; *Carl F. W.*

*Borgward, G.M.B.H.* v. *Superior Court* (1958), 51 Cal.2d 72 [330 P.2d 789] ; and *Cosper* v. *Smith & Wesson Arms Co., supra*. Each of the cited cases has one or more elements of activity within California on the part of the out-of-state defendant which Fairy-Tale urges as grounds for distinguishing it from this case in resolving the question of jurisdiction. But as with *International Shoe* and *McGee* we hold that the California cases cited above do not support Fairy-Tale's position, and that the jurisdictional tests therein discussed and applied are met in full measure in the instant case.

Fairy-Tale relies chiefly on *Martin Bros. Electric Co.* v. *Superior Court* (1953), 121 Cal.App.2d 790 [264 P.2d 183], as authority for affirming the order of the trial court quashing service. In that case the District Court of Appeal granted a petition to restrain the superior court from further proceedings against the petitioner who was the defendant in a personal injury action and ordered that court to vacate its order denying petitioner's motion to quash substituted service upon it. The facts in that case concerning the business activity of the petitioner in California are remarkably similar to the facts in the case at bar. These distinctions are noted, however: (1) In the Martin Bros. case the hair dryer which Martin Bros., an Ohio corporation, manufactured and which exploded and burned the plaintiff while she was a customer in a beauty parlor in Oakdale, California, had been sold to an independent distributor in California who took title to the dryer and thereafter sold it to the beauty parlor. In our case Catlin and Epstein, and Sales Agents do not take title to the defendant's bathing suits but acting as "sales agents," solicit orders in California, on a commission basis, which they transmit to defendant in New York for acceptance. (2) In *Martin Bros.* the dryer appears to have been shipped to the distributor for resale rather than to the beauty parlor. In our case the bathing suits are shipped, not to Fairy-Tale's sales representatives but directly to retail stores in California. (3) Unlike *Martin Bros.* which did not fix the resale price of its product, Fairy-Tale designates the selling price of its garments. (4) In our case Sales Agents furnish Fairy-Tale with reports or comments as to public acceptance of its merchandise. No similar service appears in *Martin Bros.*

From the foregoing and from a consideration of the overall methods of operation in the two cases, we conclude that *Martin Bros.* is distinguishable. Furthermore, that case was decided prior to the decision of the United States Supreme

Court in *McGee,* and to the decisions of our own Supreme Court in the Jahn, Borgward and Cosper cases, *supra.* All of these cases lay stress on the factors of (a) avoidance of multiplicity of suits and conflicting adjudications, (b) the interest of the state in providing a forum for its residents, (c) the relative availability of evidence and the burden of defense and prosecution in one place rather than another, and (d) "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " (*International Shoe, supra*). None of these factors appears to be relied upon in *Martin Bros.*

The order appealed from is reversed and the case remanded to the Superior Court for proceedings in accordance with this decision.

Duniway, Acting P. J., and Tobriner, J., concurred.