[Civ. No. 6937. Fourth Dist. Apr. 20, 1962.]

YECK MANUFACTURING CORPORATION, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; RAY ROWELL, Real Party in Interest.

Brooks Crabtree and C. C. Lewis, Jr., for Petitioner.

No appearance for Respondent.

Walkoe & Dierdorff and Albert E. Walkoe for Real Party in Interest.

SHEPARD, J.—This is a petition for a writ of mandate to compel respondent Superior Court to enter its order quashing service of summons and complaint in a damage action.

#### THE ACTION

Ray Rowell (hereafter called Rowell), real party in interest herein, filed an action in the Superior Court in San Diego County against Parkway Builders Market, Inc., a corporation,

dba Whiting Mead Co. Builder's Market (hereinafter called Parkway), Reynolds Aluminum Supply Company of California, a corporation (hereinafter called Reynolds), Yeck Manufacturing Corporation, et al., alleging, inter alia, that on July 25, 1960 Rowell purchased from Parkway "Three aluminum columns designated as Trylon Flat, that these Three (3) columns comprised of Six (6) aluminum strands and were sold to plaintiff by defendant WHITING MEAD Co. BUILDER's MARKET for the express purpose of erecting a patio roof." That defendants represented that each column containing two aluminum strands would hold a weight in excess of 1,000 pounds and were suitable for the purpose intended; that the columns would not hold the weight as represented; that they buckled and collapsed, causing injury to plaintiff to his damage. The complaint contains five alternative causes of action, some on the theory of tort and some on the theory of breach of contract warranty.

Rowell secured service of summons and complaint through mailing by the Secretary of State in accordance with the provisions of Corporations Code 6501, on the contention that petitioner was "doing business in the State" within the meaning of Code of Civil Procedure section 411, subdivision 2. The motion to quash service was heard in the Superior Court on affidavits, was denied and petition herein filed. If the trial court's order was erroneous, mandamus is the proper remedy. (*Proctor & Schwartz, Inc.* v. *Superior Court*, 99 Cal.App.2d 376, 383 [3] [221 P.2d 972].)

## FACTS

The essential facts disclosed by the record before us are without conflict. Petitioner is a Michigan Corporation with its sole manufacturing plant and sole place of physical business operation at Dundee, Michigan. It manufactures certain aluminum building materials. Its general circulatory advertising is solely in national trade magazines. It makes no personal mail or telephone solicitation of sales in California. It has no offices, agents, solicitors, sales contracts, agreements, or franchise arrangements of any kind in this state and has never listed itself with any California governmental agency. Its sole method of sale is by acceptance of orders through the United States mail for a specified price and shipment by truck or railroad to the buyer. There is no evidence of any retention of title, sale on consignment, payment of commission, or price control. Its California sales are casual and isolated.

In the manner above described, in 1960 petitioner sold to Reynolds a quantity of aluminum patio posts, columns and accessories and sent to Reynolds certain brochures and advertising materials and other written and printed descriptions of its products. The only brochure in evidence and the only one relied upon by Rowell, does not describe nor identify the columns described in the damage complaint. Throughout Rowell's complaint he described the columns he purchased as Trylon Flat with *two* strands and that defendants warranted a weight sustaining strength of in excess of 1,000 pounds per column. The brochure placed in the record and referred to by Rowell in this proceeding used only the names "The Trylon" and "The Orleans," and the pictures on the brochure clearly show *three* strands. On the first page of the brochure a weight capacity of 2,600 pounds is given, but on the somewhat blurred photographic copies the second page of the brochure apparently shows a weight capacity of 2,000 pounds. Nowhere on the brochure does the name "Trylon Flat" appear nor does any word or picture designate a two-strand column nor does the figure 1,000 pounds appear. This hiatus was referred to by counsel at the oral argument before this court but was never clarified.

On the face of the brochure appears the word "Yeck," but nowhere does the name or address of the petitioner appear. Reynolds' full name and address does appear. The record does not show when it was placed thereon but oral statements of counsel indicate that it was stamped thereon by Reynolds after reaching California. There is no evidence that it was placed thereon by or under direction of petitioner. Reynolds sold some of these posts to Parkway and Parkway in turn sold the posts in question to Rowell. There is no privity of contract between petitioner and Rowell. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 695 [19] [268 P.2d 1041].)

Rowell does not allege that he ever saw a brochure before his purchase nor that he was given one at any time; he merely recites that he relied on the representations, leaving the reader to infer that he was presented with a brochure before purchase. There is no allegation on information, belief or otherwise that petitioner sent a brochure to Reynolds with the direction that Reynolds distribute it to retailers or consumers. He argues that it must be inferred that petitioner so intended, that Reynolds carried out some sort of implied instruction in that connection and that Parkway, likewise acting on some sort of implied instruction from Reynolds, distributed the

brochure to Rowell. There is no evidence as to what other persons or firms in California, if any, purchase and sell petitioner's product. ▮ Matters appearing in a pleading by mere recital are not allegations of fact. (*California Trust Co.* v. *Gustason,* 15 Cal.2d 268, 272 [5-6] [101 P.2d 74]; *Roberts* v. *Roberts,* 81 Cal.App.2d 871, 886 [21] [185 P.2d 381]; *Lincoln* v. *Fox,* 168 Cal.App.2d 31, 33 [2-7] [335 P.2d 161].)

## "Doing Business in This State"

Is petitioner "doing business in this State"? Rowell, on the basis of the foregoing statement, claims that the record sufficiently shows a warranty by petitioner and that therefore petitioner is "doing business in this State" within the meaning of Code of Civil Procedure section 411, subdivision 2, and that therefore it has subjected itself to an action in personam in the California courts and the service of process provided by Corporations Code section 6501.

▮ When the validity of the service of summons and complaint on a foreign corporation under the substitute service provisions of said section 6501 is challenged, the burden of proving that such corporation is "doing business in this State" is on the plaintiff. (*Proctor & Schwartz, Inc.* v. *Superior Court, supra,* p. 379 [2] and authorities there cited.)

"Whether in any given case, the person served may properly be regarded as within the concept of the statute depends on the particular facts involved." (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 83 [7] [346 P.2d 409].)

▮ ". . . whether or not a foreign corporation is doing business within this state and is subject to the jurisdiction of our courts depends upon the limits for such jurisdiction as determined by our statutory and constitutional provisions, which in turn are subject to applicable federal constitutional guarantees, especially the due process guarantee of the Fourteenth Amendment. [Citation.] The problem of jurisdiction over a foreign corporation is therefore a combined state and federal question. [Citation.] ▮ Specifically, we have held that the term 'doing business' is a descriptive one that the courts have equated with such minimum contacts with the state 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " (*Empire Steel Corp. of Texas, Inc.* v. *Superior Court,* 56 Cal.2d 823, 829 [2-3] [17 Cal.Rptr. 150, 366 P.2d 502]) and at page 835: "In this connection it has been stated that for

purposes of jurisdiction: 'The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee *or in any other manner.*' "

 In analyzing the various elements properly subject to consideration in these matters, our Supreme Court said in *Fisher Governor Co.* v. *Superior Court*, 53 Cal.2d 222, 225-226 [4] [1 Cal.Rptr. 1, 347 P.2d 1], "The interest of the state in providing a forum for its residents [citation] or in regulating the business involved [citation] ; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations] ; the ease of access to an alternative forum [citation] ; the avoidance of multiplicity of suits and conflicting adjudications [citations] ; and the extent to which the cause of action arose out of defendant's local activities [citations] are all relevant to this inquiry."

From the federal constitution standpoint of "due process" under the Fourteenth Amendment, the United States Supreme Court, in *International Shoe Co.* v. *State of Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], said at page 316 [3] :

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. [Citation.] But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Reviewing the evaluation of "due process" in connection with this type of matter, the United States Supreme Court in *McGee* v. *International Life Insurance Co.*, 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223], said at pages 222 and 223: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve

parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

". . . It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."

In the *McGee* case, however, it must be noted that the service was under the special provisions of Insurance Code sections 1610-1613, the wording of which is distinctly different from that of section 411, subdivision 2. ▮▮▮ In *Cosper* v. *Smith & Wesson Arms Co., supra,* at page 82, referring to the limitation of "doing business in this State" as contained in Corporations Code section 6500, our Supreme Court said, " 'Whatever limitation it imposes is equivalent to that of the due process clause.' In essence, the statutory term 'is synonymous with the power of the state to subject foreign corporations to local process.' "

However, in reviewing the California cases actually applying these theories, philosophies and code section limitations to the subject at hand, we find no case in which substituted service, under the code sections here involved, was had on the basis of a mere sale of goods purchased in another state and shipped without title limitation to the purchaser in California, whether the descriptive material of the type here involved was present or not. Thus, in *Koninklijke L.M.* v. *Superior Court,* 107 Cal.App.2d 495 [237 P.2d 297], the petitioner maintained offices with 24 employees in California to administer and supervise its purchase contracts and for other purposes; in *Iowa Mfg. Co.* v. *Superior Court,* 112 Cal. App.2d 503 [246 P.2d 681], petitioner had an authorized dealer residing in California selling and servicing its products; in *Jeter* v. *Austin Trailer Equipment Co.,* 122 Cal.App. 2d 376 [265 P.2d 130], defendant maintained a personal representative in this state for solicitation of business and with authority to adjust complaints in addition to a warehouse stock a portion of the time; in *Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134 [214 P.2d 541], petitioner maintained a personal solicitor, licensed the use of its products and collected rental therefor in California; in *Thew Shovel Co.* v. *Superior Court,* 35 Cal.App.2d 183 [95 P.2d 149], petitioner maintained exclusive sales distributors, sold on sales

contract, title retained, and maintained price control, all in California; in *Emsco Pavement etc. Corp.* v. *City of Los Angeles,* 176 Cal.App.2d 760 [1 Cal.Rptr. 814], defendant Anders-Jahre and Company conducted, over a period of many years, a commercial shipping business in California waters with resident agents ashore; in *Florence Nightingale School of Nursing* v. *Superior Court,* 168 Cal.App.2d 74 [335 P.2d 240], petitioner maintained a large course of nursing instructions by mail with extended mutual correspondence during the course of instruction, correction of papers, solicitation through advertising in 25 magazines circulated in California; in *Thomas* v. *J. C. Penney Co.,* 186 Cal.App.2d 223 [8 Cal.Rptr. 721], defendant Fairy Tale Children's Wear, Inc., maintained solicitation through sales organizations in California, catalogs placed with outlets, price control, and a "hold harmless" agreement with wholesalers; in *West Publishing Co.* v. *Superior Court,* 20 Cal.2d 720 [128 P.2d 777], petitioner maintained four salesmen on salary with exclusive district sales powers under detailed control of company as to price and credit arrangements covering the whole state of California; in *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855 [323 P.2d 437], petitioner regularly purchased in California grain driers manufactured in California, from a partnership doing business here, there being an alleged conspiracy between petitioner and partnership to take over plaintiffs' business in California; in *Cosper* v. *Smith & Wesson Arms Co.,* supra, petitioner had a manufacturer's representative actively engaged in promoting sales on commission and operated extensively and regularly throughout California; in *Empire Steel Corp. of Texas, Inc.* v. *Superior Court,* supra, the vice president owning 47.5 per cent of Empire stock lived and carried on business operations for petitioner in this state.

On the other hand, a review of the cases in which the foreign corporations' connection with California consisted solely of a sale and delivery to a California buyer without retention of title and with no subsidiary agreements in California or commercial advertising, supervision or service, shows that the motions to quash have all been granted. For example, in *Martin Bros. Elec. Co.* v. *Superior Court,* 121 Cal.App.2d 790 [264 P.2d 183], a hair dryer was sold to a wholesaler and by the wholesaler to the consumer; the manufacturer included a guarantee; the dryer exploded and caused the damage complained of. A writ of prohibition was granted by the appellate court, holding that the motion to quash service

of summons should have been granted. In *Estwing Mfg. Co.* v. *Superior Court,* 128 Cal.App.2d 259 [275 P.2d 146], petitioner manufactured an allegedly defective hammer sold to a retailer in California without retention of title, a writ of prohibition was granted holding that the motion to quash service of summons should have been granted. It should be here noted that the factual objections raised in the dissenting opinion in that case are not present in the case at bar. It is noted in the dissenting opinion that the petitioner furnished the retailer with working window displays, made direct adjustments with consumers, and otherwise carried on activities in California which under some interpretations might be considered doing business in this state. However, none of these facts are present in the case at bar. In *Proctor & Schwartz, Inc.* v. *Superior Court, supra,* petitioner sold certain manufacturing machinery and equipment which was manufactured in Pennsylvania to a California corporation for installation in California, and sent a man to supervise installation here. Again a writ of prohibition was granted. All of these cases present far stronger support for sustaining service of summons on a theory of "doing business in this State" than does the case at bar.

Examining the facts in the case at bar reveals that there is no evidence that the contract of sale was made in California nor that petitioner had any agent, office, sales representative, retention of title, commission agreement, exclusive agency or exclusive sales outlet in California. The record reveals nothing as to the extent of petitioner's deliveries in California or who, if any other persons, purchased their goods. The sole brochure relied on by Rowell does not contain the name of the petitioner nor the petitioner's address. It does not mention the article complained of by Rowell. On its face it is the brochure of Reynolds. Stripped of legal conclusions the factual evidence shows nothing but a sale in Michigan to a California wholesaler with complete passage of title and the wholesaler making his own independent sales in this State of his own property to a retailer who in turn sold to Rowell. While not decisive of the issue, the total lack of privity between Rowell and petitioner is also worthy of note.

We think "traditional notions of fair play and substantial justice" would be offended by forcing petitioner into a California action in personam under the facts shown by the record.

In the light of the foregoing, we are satisfied that the real party in interest did not meet the burden of proof necessary to show that petitioner was doing business in California within the meaning of Code of Civil Procedure section 411, subdivision 2.

The writ is granted.

Griffin, P. J., and Coughlin, J., concurred.