[Civ. No. 22356. First Dist., Div. One. Sept. 7, 1965.]

H. LIEBES & COMPANY, Cross-complainant and Appellant, v. ERICA SHOES, INC., Cross-defendant and Respondent.

Worthington, Fields & Worthington, R. W. Fields and James M. Kennedy for Cross-complainant and Appellant.

Mullen & Filippi and Donald C. Meaney for Cross-defendant and Respondent.

MOLINARI, Acting P. J.—Cross-complainant, H. Liebes & Co., appeals from an order granting the motion of cross-defendant, Erica Shoes, Inc., to quash service of summons upon Erica on the ground of lack of jurisdiction.[1] The sole issue presented on this appeal is whether Erica Shoes, Inc., although a foreign corporation, is amenable to service of process and to the jurisdiction of the California courts.

Under subdivision 2 of Code of Civil Procedure section 411, which prescribes the means by which service of summons must be made as against a foreign corporation, it is requisite, in order that a court may acquire jurisdiction over such a corporation, that the corporation be "doing business in this State. . . ." The meaning of this term as applied to jurisdiction to maintain litigation is stated in *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 858 [323 P.2d 437], as follows: "That term is a descriptive one that the courts have equated with such minimum contacts with the state 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' (*International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause. ' "[D]oing business" within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process.'

[1]An order quashing service of summons for lack of personal jurisdiction is specifically made appealable by Code Civ. Proc., § 963, subd. 4; see also *Fielding* v. *Superior Court,* 111 Cal.App.2d 490, 492 [244 P.2d 968].

(*Eclipse Fuel etc. Co.* v. *Superior Court,* 148 Cal.App.2d 736, 738 [307 P.2d 739].)'' (See also *Empire Steel Corp.* v. *Superior Court,* 56 Cal.2d 823, 831 [17 Cal.Rptr. 150, 366 P.2d 502].) ▮ ''Whether a foreign corporation is doing business within this state so that jurisdiction may be constitutionally exercised depends upon the circumstances of each individual case. [Citations.] . . . [T]he analysis is concerned with weighing the various relevant 'contacts' by the foreign corporation within the state attempting to exercise jurisdiction. [Citation.]'' (*Empire Steel Corp.* v. *Superior Court, supra,* p. 831.) In determining whether jurisdiction may constitutionally be assumed the following factors have received attention by our courts. ''The interest of the state in providing a forum for its residents [citation] or in regulating the business involved [citation]; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations]; the ease of access to an alternative forum [citation]; the avoidance of multiplicity of suits and conflicting adjudications [citations]; and the extent to which the cause of action arose out of defendant's local activities [citations]. . . .'' (*Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].)

In the instant case, an action for damages based on breach of warranty was filed on August 4, 1961, by plaintiff, Angela Arriola, who alleged in her complaint that she fell and sustained permanent injury to her left wrist as a result of a defective pair of shoes which she was wearing, and which had been manufactured by Erica and sold to her by Liebes. Erica, named as a defendant, was subsequently served through the Secretary of State under the provisions of Corporations Code sections 6500-6504. However, pursuant to motion by Erica, the trial court entered its order quashing service of summons on the ground of lack of jurisdiction. On March 1, 1962 A. Keran Shoe Co., Inc., a California corporation which runs the shoe concession at Liebes, and which was also served as a defendant in this action, filed a cross-complaint naming Erica as a cross-defendant. Erica was again served through the Secretary of State and again Erica's motion to quash service was granted. On January 7, 1964, after having obtained leave of court, Liebes filed its cross-complaint against Keran and Erica. Purported service was made on Erica through the Secretary of State, and Erica again moved to quash this service, which motion was granted on June 19,

1964. It is this June 19, 1964 order against Liebes which is the subject of this appeal.

The last-mentioned motion was supported by the declaration of Erica's president, Saul Litvack. Liebes' opposition to the motion consisted of a declaration by Robert D. Rodden, vice-president of Keran. Litvack's declaration states that Erica is a corporation engaged in the manufacture and sale of special custom-made shoes; that it was organized and exists under and by virtue of the laws of the State of New York; and that its offices are in New York City. As to Erica's contacts with the State of California, the declaration states that the corporation has neither bank accounts nor real or personal property in this state; that it maintains no offices or warehouses or salesmen in California; that it has no stock in this state and no merchandise is sent to California either on consignment or with title retained; and that it does not carry on promotion work or advertising in California. The declaration further states that Erica's products are sold in California by only a few retailers, who place orders with Litvack personally when he comes to California, which is usually once or twice a year; that Erica's shoes are subsequently sold outright by Erica to these retailers; and finally that the retailers have no right to act for Erica.

According to Rodden's declaration, Erica shoes are sold in California in at least three retail stores, Liebes and Frank More Shoe Shop in San Francisco, and Joseph's in Beverly Hills. Two or three times a year either Litvack or Henry Balin of Erica would come to California with a sample line of shoes to promote and sell their products. On each visit the Erica representative would spend two or three days in the Bay Area and would then go to Southern California to solicit further sales. Rodden's declaration further states that on each visit to California by an Erica representative, Keran would order Erica shoes, and that it purchases shoes from Erica in substantial shipments. Finally, the declaration states that when Litvack or Balin came to the Keran concession at Liebes, they would give a "Pep talk" to the retail salesmen employed by Keran; that on at least one occasion the Erica representative offered a bonus of $100 to the salesman who sold the largest number of Erica shoes in a given period; and that Keran was authorized and did list "Erica" in the yellow section of the San Francisco telephone book under " 'Shoes—Retail.' "

The record is unclear as to whether the trial judge

who heard the subject motion read or considered these declarations in view of the colloquy between court and counsel at the hearing of the motion which indicates that the court was under the impression that it was constrained to grant the motion because another judge had granted the two prior motions. The record discloses, however, that the trial court was apprised by counsel at the hearing of the substance of the respective declarations. Moreover, the order granting the motion to quash recites that it is based upon the "declarations filed herein. . . ." Under the circumstances, and in the absence of any affirmative showing to the contrary, the trial court is presumed to have performed its duty and to have acted regularly. (Code Civ. Proc., § 1963, subd. 15; *Hosner* v. *Skelly*, 72 Cal.App.2d 457, 462 [164 P.2d 573]; *Newman* v. *Los Angeles Transit Lines*, 120 Cal.App.2d 685, 691 [262 P.2d 95]; *People* v. *Jones*, 207 Cal.App.2d 415, 426 [24 Cal. Rptr. 601].) Accordingly, we shall consider that the trial court, in making its order, considered both declarations, as it was required to do, since it is upon these declarations that the propriety of the order appealed from depends.

 Erica asserts that the scope of our review is limited to determining whether the trial court abused its discretion. This contention is incorrect. The extent of our review depends, in the first instance, upon whether the evidence presented by the subject declarations is conflicting. If it is, an appellate court will not disturb the implied findings of fact made by the trial court in support of the order, the applicable rule being that it will be presumed that the court found every fact necessary to support the order justified by the evidence. (*Griffith Co.* v. *San Diego College for Women*, 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349]; *Emsco Pavement etc. Corp.* v. *City of Los Angeles*, 176 Cal.App.2d 760, 766 [1 Cal.Rptr. 814].) Accordingly, insofar as the trial court has passed on the weight of the evidence or the credibility of witnesses, its implied findings are conclusive; and where an order is made on affidavits involving a decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review. (*Griffith Co.* v. *San Diego College for Women, supra,* p. 508; *Emsco Pavement etc. Corp.* v. *City of Los Angeles, supra,* p. 766.) Where, on the other hand, the evidence is not conflicting, the reviewing court is not bound by the findings based thereon and the determination is a matter of law. (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 81 [346 P.2d

409]; *Sims* v. *National Engineering Co.,* 221 Cal.App.2d 511, 513 [34 Cal.Rptr. 537]; *Emsco Pavement etc. Corp.* v. *City of Los Angeles, supra,* p. 766.)

█ Adverting to the instant case in the light of the foregoing principles, we are satisfied that it is not a true case of conflicting evidence but one in which there is no substantial conflict as to what activities on the part of Erica took place in California. Accordingly, the determination of whether or not these activities amount to ''doing business in this State'' within the compass of the rule hereinbefore delineated is a matter of law. █ Essentially the facts as presented to the trial court disclose that a representative of Erica came to California usually twice each year, at which time he called upon certain retailers who placed orders for Erica's products personally with such representative.

Contacts similar to these have been held sufficient to sustain service of process against a foreign corporation. (*Carl F. W. Borgward, G.M.B.H.* v. *Superior Court,* 51 Cal.2d 72 [330 P.2d 789]; *Kneeland* v. *Ethicon Suture Laboratories, Inc.,* 118 Cal.App.2d 211 [257 P.2d 727]; *Cosper* v. *Smith & Wesson Arms Co., supra,* p. 77; *Sims* v. *National Engineering Co., supra,* p. 511; *Gordon Armstrong Co.* v. *Superior Court,* 160 Cal.App.2d 211 [325 P.2d 21]; *Florence Nightingale School of Nursing* v. *Superior Court,* 168 Cal.App.2d 74 [335 P.2d 240]; *American Continental Import Agency* v. *Superior Court,* 216 Cal.App.2d 317 [30 Cal.Rptr. 654]; *James R. Twiss, Ltd.* v. *Superior Court,* 215 Cal.App.2d 247 [30 Cal. Rptr. 98]; *Pope* v. *National Aero Finance Co.,* 220 Cal. App.2d 709 [33 Cal.Rptr. 889].) The crux of the holding of these cases is that the sale by a foreign corporation of a substantial quantity of its products in this state when combined with activities consisting of regular and continuous solicitation of customers or the promotion of sales in this state constitutes the ''doing of business'' in California. In some of these cases, in addition to the selling of its products as a result of the regular and continuous solicitation of business either through the mails or the activities of local independent distributors, the foreign corporation sent its agents *into* this state to negotiate contracts or to perform sales promotion work. (See *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court, supra; Kneeland* v. *Ethicon Suture Laboratories, Inc., supra; Cosper* v. *Smith & Wesson Arms Co., supra; Sims* v. *National Engineering Co., supra; Gordon Armstrong Co.* v. *Superior Court, supra; American Conti-*

*nental Import Agency* v. *Superior Court, supra,* and *Pope* v. *National Aero Finance Co., supra.*)

In *Nightingale,* a foreign corporation which had neither place of business, nor agents, employees or representatives, nor records of its business in California was held to be doing business in this state where its activity was confined to the solicitation of students for its correspondence courses in nursing by advertising in numerous magazines in this state, and where, upon inquiry made in response to such advertisement, it mailed to a prospective California student a form letter, a descriptive brochure, and an application, and where, upon enrollment, the students received lessons by mail, submitted their work by mail, and received comments and criticisms from the foreign corporation by mail. The gist of the holding is that there is no essential difference between solicitation by agents in California and solicitation by advertising in magazines, and that systematic and continuous solicitation, plus continuous, regular and systematic activity in this state producing a flow of business in California which creates obligations therein constitutes ''doing business'' for the purpose of amenability to process and jurisdiction.

Of particular interest is *Twiss,* wherein the appellate court refused to compel the trial court to quash service of summons upon the defendant corporation, the sole California contacts of the defendant corporation consisting in the entry of one of its vessels into a California port on one occasion and the fact that the corporation enjoyed the port's facilities for the period of its stay and during this time made innumerable purchases to facilitate the unloading of cargo. We also note *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223], wherein it was held that the delivery of a single insurance contract in California by a foreign corporation, the mailing of premiums from this state and the residence of the insured in this state when he died, supplied sufficient minimum contacts to give the contract upon which the suit was based a substantial connection with the State of California for purposes of due process.

The cases relied upon by Erica are clearly distinguishable since they do not involve situations in which there was a course of continuous business solicitation or sales promotion activity in this state, but merely the sale of products in this state through an independent distributor without any additional activities (*Martin Bros. Elec. Co.* v. *Superior Court,* 121 Cal.App.2d 790 [264 P.2d 183]; *Estwing Mfg. Co.* v.

*Superior Court,* 128 Cal.App.2d 259 [275 P.2d 146]), or only isolated or casual instances of business activity *(Yeck Mfg. Corp.* v. *Superior Court,* 202 Cal.App.2d 645 [21 Cal.Rptr. 51]).

Again adverting to the case at bench, we find that in addition to the presence of sufficient minimum contacts to give Erica the requisite connection with this state for purposes of due process, a consideration of the instant case in the light of the factors mentioned in *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, leads to the conclusion that Erica is amenable to service of process in this action. Liebes and Keran are clearly California residents. The only party to the litigation definitely established to be a nonresident is Erica. Although plaintiff's residence does not affirmatively appear in the record, it is probable that she is a resident of this state since the record discloses that she purchased the shoes in question in California, the accident took place in this state, and she chose this state as the forum in which to file her action. In any event, if she were not a resident of California there is no showing that her residence is the same as Erica's. In the absence of such showing it is reasonable to assume that plaintiff is a resident of California or of some jurisdiction other than New York. Under all of the circumstances, including the strong circumstance that the cause of action arose out of Erica's local activities, the California courts will presumably provide a more convenient forum for the production of witnesses and other evidence relating to the cause of action being sued upon. Additionally we have present the factors that if Erica were not subject to the jurisdiction of the California courts any determination of the issues would not be res judicata upon Erica; that if jurisdiction against Erica were refused in this action, Keran and Liebes, or either of them, would be required to bring a second suit upon the cause of action which is the subject of their respective cross-complaints filed in this action, thus causing a multiplicity of suits and a possibility of conflicting adjudications.

We are satisfied from a reading of the decisions that these "relevant factors" play an important part in determining whether the minimum contacts are sufficient to render a foreign corporation amenable to process. Thus, in *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855 [323 P.2d 437], the Supreme Court, in holding that under the minimum contact test regular sales solicitation alone can constitute the

"doing business" which will make a foreign corporation amenable to process in actions engendered by such activities, stressed the significance of considering to what extent the cause of action being sued upon arises out of the corporation's contacts with the state asserting jurisdiction and to what extent a denial of jurisdiction would lead to duplicity of litigation. The reviewing court took cognizance of the fact that modern transportation and communication have made it much less burdensome for a party sued to defend itself in a state where it engaged in economic activity. The significance of the application of the subject "relevant factors" is demonstrated in *Waco-Porter Corp.* v. *Superior Court,* 211 Cal. App.2d 559 [27 Cal.Rptr. 371], where the sole contact between the foreign corporation and California consisted in the sale in this state of the corporation's products by its exclusive distributor, an independent California corporation, which bought the products outright in Illinois from the foreign corporation. In upholding the trial court's finding that the foreign corporation was doing business in California, the appellate court stated as follows: "When Waco-Porter for its own 'advantage' availed itself of the privilege of selling its product to a California distributor for resale, it knew, or could reasonably be expected to know, that the equipment would be used by persons in California; that if there were a defect in the equipment it might result in an accident to a person using the equipment in California; that if an accident occurred the witnesses to the facts surrounding the accident would be at the situs of the accident; that the equipment involved would also be there. Furthermore, any intervening factor which might provide a defense would be most likely to occur in California. Certainly it is not unreasonable to require petitioner to do that which it reasonably should have expected to do, namely, defend an action of this nature at the place where (a) the equipment was used, (b) the defect became known, and (c) the damage was caused." (P. 566.)

In sum, in the light of the foregoing principles it is not a deprivation of due process to require Erica to do that which it reasonably should have expected to do, namely, defend an action growing out of its sales activities in California, it having availed itself of its own volition of the privilege of selling its products in this state.

The order is reversed.

Sims, J., concurred.