[Civ. No. 23190.    First Dist., Div. One.    Dec. 10, 1965.]

THE HARRY GILL COMPANY, Petitioner, v. THE SU-PERIOR COURT OF SANTA CLARA COUNTY, Respondent; STEPHEN ERIC SCHNEIDER, a Minor, etc., Real Party in Interest.

Kane, Owen & Melbye and Cyril Viadro for Petitioner.

No appearance for Respondent.

Lewis & Whiting and Sam J. Whiting, Jr., for Real Party in Interest.

MOLINARI, J.—This is a petition by The Harry Gill Company, a corporation, for a writ of mandate seeking to compel the Superior Court of Santa Clara County to quash service of summons made upon petitioner. The sole issue presented is whether petitioner, as a foreign corporation, is amenable to service of process and the jurisdiction of the California courts.

In *H. Liebes & Co.* v. *Erica Shoes, Inc.*, 237 Cal.App.2d 25, 27-28 [46 Cal.Rptr. 470], we stated the applicable principles as follows: "Under subdivision 2 of Code of Civil Procedure section 411, which prescribes the means by which service of summons must be made as against a foreign corporation, it is requisite, in order that a court may acquire jurisdiction over such a corporation, that the corporation be 'doing business in this State. . . .' The meaning of this term as applied to jurisdiction to maintain litigation is stated in *Henry R. Jahn & Son* v. *Superior Court*, 49 Cal.2d 855, 858 [323 P.2d 437], as follows: 'That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "' (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) Whatever limitation it imposes is equivalent to that of the due process clause. " ' [D]oing business' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject foreign corporations to local process." (*Eclipse Fuel etc. Co.* v. *Superior Court*, 148 Cal.App.2d 736, 738 [307 P.2d 739].)' (See also *Empire Steel Corp.* v. *Superior Court*, 56 Cal.2d 823, 831 [17 Cal. Rptr. 150, 366 P.2d 502].) 'Whether a foreign corporation is doing business within this state so that jurisdiction may be constitutionally exercised depends upon the circumstances of each individual case. [Citations.] . . . [T]he analysis is concerned with weighing the various relevant "contacts" by the foreign corporation within the state attempting to exercise jurisdiction. [Citation.]' (*Empire Steel Corp.* v. *Superior Court, supra,* p. 831.) In determining whether jurisdiction may constitutionally be assumed the following factors have received attention by our courts: 'The interest of the state in providing a forum for its residents [citation] or in regulat-

ing the business involved [citation]; the relative availability of evidence and the burden of defense and prosecution in one place rather than another [citations]; the ease of access to an alternative forum [citation]; the avoidance of multiplicity of suits and conflicting adjudications [citations]; and the extent to which the cause of action arose out of defendant's local activities [citations]. . . .' (*Fisher Governor Co.* v. *Superior Court*, 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].)''

In the instant case an action for damages for personal injuries was filed in respondent court against petitioner, the Palo Alto Unified School District and Ronald Skillicorn, an employee of the school district. The amended complaint filed therein alleged that on or about August 6, 1963 one Stephen E. Schneider, a minor, the real party in interest, sustained injuries when a vaulting pole, furnished him by the Palo Alto Unified School District and manufactured, supplied and sold by petitioner, broke while he was using it, causing him to fall. Petitioner was served by service upon the Secretary of State pursuant to Corporations Code sections 6501-6502, whereupon petitioner moved to quash service of summons on the ground that it was a foreign corporation not doing business in California and not subject to the jurisdiction of respondent court. The motion was supported by the declaration of petitioner's president which stated essentially that petitioner manufactures and distributes track and field equipment throughout the United States; that it does not now, nor has it ever, done business in California; that it has no representatives in California, and that its only business office and plant are located in Urbana, Illinois.

No declaration was filed in opposition to that submitted by petitioner. However, when the motion came on for hearing the real party in interest presented the testimony of Marvin Stroh, who testified as follows: That he owns Stroh & Co., a company located in San Francisco that sells athletic equipment; that Stroh & Co. started in business in 1951 and since that time has placed approximately 15-20 orders per year with petitioner; that Stroh & Co. has petitioner's catalog and this catalog illustrates petitioner's products and furnishes prices; that every year when petitioner's product line changes, it sends its new catalogs to Stroh & Co. and its other California dsitributors; that when Stroh & Co. requires additional copies of the catalog, petitioner furnishes them; that

Stroh & Co. has required additional catalogs every year; that Stroh & Co. sends the extra catalogs to "anybody that might want them," including schools and colleges; that when Stroh & Co. places an order with petitioner, it is generally for "drop shipment"; that when Stroh & Co. is awarded a contract pursuant to bid it orders either directly from petitioner in Illinois or from other national distributors in California; that his company is a California distributor for petitioner; that petitioner has other national distributors in California, i.e., "The Wilson people in San Francisco" and the "Rawlings Company" and "McGregor-Brunswick Company" in Los Angeles; that these companies have added petitioner's line to their supply catalogs; that when Stroh & Co. purchased directly from petitioner, Stroh & Co. furnished shipping instructions, and petitioner would bill Stroh & Co. on petitioner's invoice, and Stroh & Co., in turn, would bill its customer; that when petitioner's products were purchased from a distributor, Stroh & Co. was billed by the distributor; that Stroh & Co. has no contract with petitioner, and receives no commission for its sales; that McGregor-Brunswick and Rawlings place orders with petitioner in the same manner that Stroh & Co. does and have the same type of "contact" with petitioner that Stroh & Co. does; that he knows of no exclusive agent for petitioner's products in California; that petitioner has no warehouse in California; that he knows of no other advertising done in California by petitioner other than through its catalog; that the national distributors do not have an exclusive distributorship with petitioner for an assigned geographical area; that while petitioner does not have national representatives, it has some national distributors; and that Stroh "wouldn't talk to anybody in California that would be . . . [petitioner's] distributor, we would only buy from one of several companies if we wanted to buy some of their products"; that no one from petitioner's company had ever called at his business; that he had met petitioner's representatives at sporting goods conventions in Los Angeles; that petitioner has representatives attending the conventions; that he had met a Mr. Eck from The Harry Gill Company at the Los Angeles conventions; that petitioner has samples on display in hotel rooms at the Los Angeles conventions and puts on exhibits for dealers and others to see; and that at the Los Angeles conventions petitioner has catalogs and price lists available for dealers and others to take and use.

The court below denied petitioner's motion to quash service of summons, whereupon the instant petition was filed. Following real party in interest's reply to the petition we issued the alternative writ.

Alluding to the scope of our review, we note that the evidence adduced is not conflicting. Accordingly, we are not bound by the trial court's findings based on the evidence because the determination is a matter of law. (*Cosper* v. *Smith & Wesson Arms Co.,* 53 Cal.2d 77, 81 [346 P.2d 409]; *Sims* v. *National Engineering Co.,* 221 Cal.App.2d 511, 513 [34 Cal.Rptr. 537]; *Emsco Pavement etc. Corp.* v. *City of Los Angeles,* 176 Cal.App.2d 760, 766 [1 Cal.Rptr. 814].) We have concluded, however, that the trial court's determination was correct and that it acted properly in denying the motion to quash the summons. In reaching this conclusion we have determined, upon an analysis of petitioner's activities, that they provide the minimum contacts sufficient to sustain service of process upon a foreign corporation.

The facts presented to the trial court show, essentially, that petitioner regularly sent a substantial quantity of its products into this state through four independent distributors to whom petitioner each year furnished catalogs illustrating its products and giving the prices therefor; that the goods ordered were shipped either to the distributors or directly to the consumer in this state; that on occasions, Stroh & Co. would purchase petitioner's goods from the other California distributors; and that petitioner sent its representatives to conventions held in California at which it would display samples, put on exhibits for the dealers and others, and at which catalogs and price lists were made available.

■ Analyzing the foregoing activities on the part of petitioner foreign corporation in the light of the decisional law of this state, we find that the crux of the holding in the cases which have found similar activities sufficient to provide the necessary minimum contacts to sustain service of process is that the sale by a foreign corporation of a substantial quantity of its products in this state when combined with activities consisting of regular and continuous solicitation of customers or the promotion of sales in this state constitutes "doing business" in California. (See *H. Liebes & Co.* v. *Erica Shoes, Inc., supra,* p. 27; *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court,* 51 Cal.2d 72 [330 P.2d 789]; *Kneeland* v. *Ethicon Suture Laboratories, Inc.,* 118 Cal.App. 2d 211 [257 P.2d 727]; *Cosper* v. *Smith & Wesson Arms Co., supra,* p. 77; *Sims* v. *National Engineering Co., supra,* p.

511; *Gordon Armstrong Co.* v. *Superior Court,* 160 Cal.App. 2d 211 [325 P.2d 21]; *Florence Nightingale School of Nursing* v. *Superior Court,* 168 Cal.App.2d 74 [335 P.2d 240]; *American Continental Import Agency* v. *Superior Court,* 216 Cal.App.2d 317 [30 Cal.Rptr. 654]; *James R. Twiss, Ltd.* v. *Superior Court,* 215 Cal.App.2d 247 [30 Cal.Rptr. 98]; *Pope* v. *National Aero Finance Co.,* 220 Cal.App.2d 709 [33 Cal. Rptr. 889].) In some of the cases, in addition to the selling of its products as a result of the regular and continuous solicitation of business either through the mails or the activities of local independent distributors, the foreign corporation sent its agents *into* this state to negotiate contracts or to perform sales promotion work. (See *H. Liebes & Co.* v. *Erica Shoes, Inc., supra,* p. 29; *Carl F. W. Borgward, G.M.B.H.* v. *Superior Court, supra; Kneeland* v. *Ethicon Suture Laboratories, supra; Cosper* v. *Smith & Wesson Arms Co., supra; Sims* v. *National Engineering Co., supra; Gordon Armstrong Co.* v. *Superior Court, supra; American Continental Import Agency* v. *Superior Court, supra;* and *Pope* v. *National Aero Finance Co., supra.*)

We note, however, that "doing business" in this state does not necessarily depend upon continuous activity resulting in substantial contact or upon a quantitative consideration of the activities, but in the analysis of the foreign corporation's activities "in terms of their 'quality and nature,' and their connection with the obligations sued upon." (*Empire Steel Corp.* v. *Superior Court,* 56 Cal.2d 823, 832 [17 Cal.Rptr. 150, 366 P.2d 502].) Thus, in *Liebes,* we held that the activities of a New York shoe manufacturing corporation consisting in the selling of its products through California retailers, and the sending of representatives two or three times each year to call on the retailers and receive orders for its shoes constituted "doing business" in this state subjecting the foreign corporation to service of process in a personal injury action based on breach of warranty arising out of an allegedly defective shoe manufactured by the corporation in New York and sold in California by a retailer to the person injured. Illustrative of the "doing business" concept delineated in *Empire* are *Twiss* and *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [78 S.Ct. 199, 2 L.Ed.2d 223]. In *Twiss,* the sole California contacts of the defendant corporation consisted in the entry of one of its vessels into a California port on one occasion and the fact that the corporation enjoyed the port's facilities for the

period of the ship's stay and during this time made innumerable purchases to facilitate the unloading of cargo. *McGee* held that the delivery of a single insurance contract in California by a foreign corporation, the mailing of premiums from this state and the residence of the insured in this state when he died, supplied sufficient minimum contacts to give the contract upon which the suit was based a substantial connection with the State of California for purposes of due process.

Similarly, in *Borgward*, the petitioner, a German corporation, was held amenable to process in California in an action relating to a contract which it entered into with the plaintiffs, the real parties in interest, whereby the petitioner promised that the plaintiffs' franchise to market the petitioner's products in an assigned area would not be terminated. The court noted that not only were the petitioner's products sold in large quantities in California through an independent importer, but also that the petitioner, on three occasions, sent an agent to California for a stay of several days to negotiate and arrange for the distribution of the petitioner's products in California, and the alleged cause of action was directly related to the activities of this agent in California.

A case factually similar to the one at bench and one relying strongly on the connection of the activities of the foreign corporation with the obligation sued upon is *Waco-Porter Corp.* v. *Superior Court,* 211 Cal.App.2d 559 [27 Cal.Rptr. 371], wherein the foreign corporation was sued for damages for personal injuries suffered by the plaintiff in an accident resulting from the use of high school gymnasium equipment manufactured by said corporation. The equipment manufactured by the foreign corporation found its way into California through a California corporation which was the exclusive distributor and sales representative in Northern California for such equipment and which the latter corporation purchased outright from the former in Illinois. The only physical presence by any of the foreign corporation's agents or representatives consisted of a visit by its president *after* the subject accident for the purpose of investigating and conferring with the president of the California corporation concerning the accident. In denying mandamus to compel the quashing of service of summons upon the foreign corporation, the appellate court, relying strongly upon the factors stressed by our Supreme Court in *Fisher Governor Co.* v. *Superior Court,* 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1],

which we have hereinabove detailed, stated as follows: "In the case at bar, the accident occurred in Tuolumne County, where the action is pending. When Waco-Porter for its own 'advantage' availed itself of the privilege of selling its product to a California distributor for resale, it knew, or could reasonably be expected to know, that the equipment would be used by persons in California; that if there were a defect in the equipment it might result in an accident to a person using the equipment in California; that if an accident occurred the witnesses to the facts surrounding the accident would be at the situs of the accident; that the equipment involved would also be there. Furthermore, any intervening factor which might provide a defense would be most likely to occur in California. Certainly it is not unreasonable to require petitioner to do that which it reasonably should have expected to do, namely, defend an action of this nature at the place where (a) the equipment was used, (b) the defect became known, and (c) the damage was caused." (P. 566.)

Another significant case involving an injury resulting from the purchase and use in this state of a product manufactured by a foreign corporation is *Cosper* v. *Smith & Wesson Arms Co., supra,* 53 Cal.2d 77. There a revolver manufactured by Smith and Wesson, a foreign corporation, was purchased in this state. The purchaser was allegedly injured when the cylinder of the revolver exploded while it was being used in target practice. Smith and Wesson distributed its products F.O.B. Springfield, Massachusetts, through regular wholesale and retail channels. It did, however, have a manufacturer's representative named Lookabaugh in this state who conducted sales promotion of the manufacturer's products on a commission basis. Lookabaugh bought his own samples but was furnished advertising material by Smith and Wesson. In reversing an order granting the motion of Smith and Wesson to quash service of summons our Supreme Court made these pointed observations: "Whether Smith and Wesson was operating 'through an independent contract, agent, employee or in any other manner' [citations], the essential factor is that Lookabaugh in his selling and advertising activities was performing services for Smith and Wesson and providing it with the opportunity for 'regular contact with its customers and a channel for a continuous flow of business into the state.' [Citation.] In short, the arrangement of Smith and Wesson with Lookabaugh appears, in the light of the presi-

dent's affidavit, to have given Smith and Wesson substantially the business advantages that it would have enjoyed 'if it conducted its business through its own offices or paid agents in the state' [citation]; . . . A manufacturer of arms whose products are sold on a wide scale throughout the state through the extensive, regular and continuous services of a 'manufacturer's representative' should not be perpetually immune from the service of process in actions brought by residents of this state because of injury sustained from alleged defects in the manufacturer's products.'' (Pp. 83-84.) (See also *Gordon Armstrong Co.* v. *Superior Court, supra,* 160 Cal.App.2d 211; *Thomas* v. *J. C. Penney Co.,* 186 Cal. App.2d 223 [8 Cal.Rptr. 721].)

The cases relied upon by petitioner, excepting *Cosper,* which as already indicated, does not support its position, are clearly distinguishable. *Yeck Mfg. Corp.* v. *Superior Court,* 202 Cal.App.2d 645 [21 Cal.Rptr. 51], involves an isolated and casual instance of business activity. *Martin Bros. Elec. Co.* v. *Superior Court,* 121 Cal.App.2d 790 [264 P.2d 183], and *Estwing Mfg. Co.* v. *Superior Court,* 128 Cal.App.2d 259 [275 P.2d 146], involve sales of products in this state through an independent distributor without any additional activities. These cases not only deal with a situation in which there was absent a course of continuous business solicitation or sales promotion activity in this state, but, with the exception of *Yeck,* were all decided prior to *McGee, Jahn, Cosper* and *Fisher* which place emphasis not upon the quantity of the activities in this state, but their quality, nature and connection with the obligations sued upon. *Yeck* took cognizance of these last-mentioned cases but concluded that a *mere* sale of goods purchased in another state and shipped without title limitation to the purchaser in California did not come within their purview.

Adverting to the case at bench we not only find a course of continuous sales promotion activity resulting in a quantitative substantial contact with California, but we conclude that the quality and nature of the activity was such as to create substantial contacts in this state in relation to the claim asserted by plaintiff in the light of the rule declared in *Fisher* and the factors alluded to in *Waco-Porter* and *Fisher.* The record discloses that the accident took place in the county where the action is pending and that all of the parties to the litigation excepting petitioner are residents of California. As was the case in *Waco-Porter,* petitioner availed itself of the privilege of selling its products through Cali-

fornia distributors for resale, knowing or reasonably being expected to know, that such equipment was going to be used by persons in California, and that if the equipment was defective it might result in an accident to such persons. It is reasonable to expect that if such an accident did occur petitioner could reasonably be expected to know that the witnesses and the equipment involved, as well as any intervening factor which might provide defense, would be at the situs of the accident, thus providing a more convenient forum for the production of witnesses and other evidence. Accordingly, in the light of all the circumstances, it would not be a deprivation of due process to require petitioner to defend the instant action which grew out of its sales activities in California.

The petition for a writ of mandate is denied and the alternative writ is discharged.

Sullivan, P. J., and Sims, J., concurred.